**George BALL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 79–11.**

District of Columbia Court of Appeals.

Submitted Oct. 18, 1979.

Decided April 6, 1981.

Dennis M. Hart, Washington, D. C., appointed by the court, was on the briefs for appellant.

Carl S. Rauh, Acting U. S. Atty., Washington, D. C. at the time the brief was filed and the case was submitted, and John A. Terry, Peter E. George, Richard H. Saltsman and Harold L. Cushenberry, Jr., Asst. U. S. Attys., Washington D.C. were on the brief for appellee.

Before KELLY, MACK and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellant George Ball was convicted by a jury of three counts of threats, D.C.Code 1973, § 22–2307,[1] and four counts of obstructing justice, D.C.Code 1973, § 22–703(a).[2] He was thereafter sentenced to concurrent three to twelve-year sentences for each count. The contentions on appeal are that a seventeen-month delay between his arrest and trial deprived appellant of his Sixth Amendment right to a speedy trial and that the double jeopardy clause of the Fifth Amendment prohibited his threats convictions because those offenses merged with the obstructing justice charges.

The evidence was that on December 9, 1976, appellant's scheduled trial for assault with a dangerous weapon, D.C.Code 1973, § 22–502, was continued until the following day.[3] Four government witnesses, John and Kenneth Agnew, Jeffrey McGhee, and Curtis Lassiter, then left the courthouse together, after being issued new subpoenas to return the next day. They drove to the

Agnews' apartment building and parked in the adjoining lot while Kenneth Agnew went inside.

On the way to his own apartment, Kenneth stopped by appellant's apartment where he saw appellant, his brother, Melvin Ball, and two others, Thomas Coleman and Thomas Hamilton. Appellant asked Kenneth what he and the other witnesses had said in court and whether he intended to return the next day. Kenneth answered that he had said nothing, and that he had been subpoenaed to return to court.

When Agnew left, Melvin Ball, Coleman, and Hamilton went out to the parking lot, where Melvin Ball ordered the other three witnesses out of the car, saying they had "some explaining to do." Melvin Ball and John Agnew got into a scuffle. Appellant then arrived at the parking lot and told the witnesses that his brother, or his "crew" would "get" them if they returned to court the next day. Lassiter, afraid that he would be shot, ran into the woods, pursued by two men whom he was unable to identify.

The Agnews' mother, Mary Alice Agnew, testified that when she and Kenneth saw the fight through their window, Kenneth left to join the others at the parking lot. She said that appellant later came to her apartment and warned her sons not to go to court or he would "get" them, suggesting that they ignore the subpoenas.

The next day, when the four witnesses did not appear, the complainant in that case

---

1. D.C.Code 1973, § 22–2307 states, in pertinent part:

 Whoever threatens . . . to kidnap any person or to injure the person of another or physically damage the property of any person . . . shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

2. D.C.Code 1973, § 22–703(a) states, in pertinent part:

 Whoever corruptly, by *threats or force*, endeavors to influence, intimidate, or impede any juror, *witness*, or officer in any court in the District in the discharge of his duties, or, *by threats or force, in any other way obstructs or impedes or endeavors to obstruct*

*or impede the due administration of justice* . . ., or whoever willfully endeavors by means of bribery, misrepresentation, intimidation, or force or threats of force, to obstruct, delay, or prevent the communication to an investigator . . . by any person of information relating to a violation of any criminal statute . . . or injures any person or his property on account of the giving by such person or by any other person of such information . . . shall be fined not more than $1,000 or be imprisoned not more than three years, or both. [Emphasis added.]

3. That case was given Super.Ct.Cr. No. 74548–76.

told the prosecutor that he believed they had been threatened the evening before. Similar information was received from one or more police officers, some of whom apparently had inquired about the matter earlier by telephone. The prosecutor and several police officers also saw appellant, Melvin Ball, Thomas Coleman, and Thomas Hamilton "huddling or conferring as people do in a football game ... and dispersing with each person going to a separate exit to that courthouse." The trial court consequently ordered appellant held without bond until a preventive detention hearing, scheduled three days later, could be held. The prosecutor ordered the arrests of the other three men the same day.

Appellant was indicted on December 23, 1976, for threats and obstructing justice. On February 15, 1977, the trial court granted appellant's motion to dismiss the four counts of threats, for failure to allege any intent to extort. That ruling was appealed by the government on February 23, and reversed by this court in an unpublished order issued on November 9, 1977; the case was also remanded for trial. On December 16, trial was set for April 5, 1978, when it was again continued, until May 12.[4] The jury returned its verdict on May 19, 1978.[5]

Appellant was sentenced on August 16 to concurrent three to twelve-year sentences for each count, to run consecutively to any other sentence then being served. On August 25, 1978, he filed a notice of appeal to this court.

I

 .In determining whether appellant's Sixth Amendment right to a speedy trial was violated, we once again weigh the four factors enumerated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)—(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice resulting from the delay—mindful that a delay of more than a year gives appellant's speedy trial claim prima facie merit. *Branch v. United States*, D.C.App., 372 A.2d 998 (1977).

 Of the seventeen months between arrest and trial, eight and one half months were consumed by the government's appeal of the pretrial dismissal of the threats counts, two and a half months of delay occurred before the government's appeal and six months of delay transpired after we reversed the trial court's ruling.[6] Since the pre and post-appeal delay periods were due to "routine, normal delay[s] inherent in judicial procedures," *Bond v. United States*, D.C.App., 233 A.2d 506, 511 (1967), *quoted in Day v. United States*, D.C.App., 390 A.2d 957, 966 (1978) (approved en banc in *Alston v. United States*, D.C.App., 412 A.2d 351 (1980)), we weigh them less heavily against the government and look primarily to the circumstances surrounding the eight and a half month delay in deciding the government's interlocutory appeal.

In *Day v. United States, supra*, an eighteen and a half month delay caused by an interlocutory appeal was held to be "countable and chargeable to the government," *id.* at 966, but not to be grounds for dismissal, even though, as here, the expedited appeal procedure required by D.C.Code 1973, § 23–

---

4. Appellant's motions to dismiss for "prosecutorial usurpation of the grand jury function," violation of his First Amendment rights, vagueness of the obstruction of justice counts, and failure to allege intent to kidnap as to the threats counts were all denied by the trial court on May 12. His motion to dismiss for lack of a speedy trial, filed on March 10, was denied post trial, on June 2, 1978.

5. Appellant was found not guilty of threatening Curtis Lassiter.

6. The order was issued shortly after this court denied a petition for rehearing en banc of *United States v. Young*, D.C.App., 376 A.2d 809, 813 (1977), which decided the very issue of the government's appeal in this case, holding that specific intent to extort is not a necessary element of D.C.Code 1973, § 22–2307 and that § 22–2307 is not in pari materia with § 22–2306.

104(e) was not invoked by the prosecutor.[7] This court reasoned that dismissal was not compelled because there was no "prejudice to defense preparation (or any other type of prejudice) . . . [and] appellant had [not] pressed hard for expedited resolution of the government's pretrial appeal. . . ." *Id.* at 973.

This case is indistinguishable from *Day*: appellant failed to assert his speedy trial right until May 12, 1978, three days before trial; there is no evidence that appellant made any other request for expedited resolution of his trial or appeal; and he never objected to the trial court's granting continuances during the pendency of the appeal. Furthermore, as appellant concedes in his brief on appeal, he can "point to no specific examples of . . . prejudice" attributable to the pre-trial delay. Consequently, absent any indications of prejudice to the appellant or of deliberately dilatory government tactics, we agree that the government has carried its burden of persuasion on the issue and that the severe remedy of reversal on speedy trial grounds is inappropriate in this case.

## II

Appellant argues, for the first time on appeal, that his conviction for three counts of threats, D.C.Code 1973, § 22–2307, and four counts of obstructing justice, D.C.Code 1973, § 22–703, imposed multiple punishments for the same offense and, therefore violated the double jeopardy clause of the Fifth Amendment.

The double jeopardy clause "protects against a second prosecution for the same offense after acquittal . . . against a second prosecution . . . after conviction . . . [a]nd . . . against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

In *Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980), the Supreme Court said that "the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized." The Court ruled that Congress had not authorized the imposition of consecutive sentences for rape and for an unintentional killing committed in the course of a rape, basing its decision on D.C.Code 1973, § 23–112 which establishes a presumption of consecutive sentences for conviction of separate offenses, unless otherwise provided by the sentencing court, "whether or not the offense . . . arises out of the same transaction [as another offense] and requires proof of a fact which the other does not." Justice Stewart explained that this language codified a rule of statutory construction, in effect as a short-cut to determine whether consecutive punishment could be imposed or, as stated in the legislative history of § 23–112, "to obviate the need for the courts to search for legislative intent." *Id.* at 693, 100 S.Ct. at 1438.

More recently, the Supreme Court stated that this double jeopardy "question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed." *Albernaz v. United States*, —— U.S. ——, ——, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). In the preceding statutory analysis, the *Albernaz*

---

7. D.C.Code 1973, § 23–104(e) requires us to expedite government appeals. In *Day v. United States, supra* at 968, we said that the prosecutor and the appellate court shared the responsibility of not expediting the appeal in that case because the duty to expedite could have been cited to the court during the eighteen and a half month appeal period. But the prosecutor's failure to invoke the procedure is not dispositive of the speedy trial issue. *See id.* at 967–69. We note that in this case the government's filing of a motion for summary reversal obviated the need for full briefing and argument and expedited the appeal process, thereby diminishing the force of appellant's accusation of deliberate governmental delay.

Court determined that Congress intended to permit the imposition of consecutive sentences for a single agreement constituting conspiracy to import marijuana in violation of 21 U.S.C. § 963 and conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. The Court's double jeopardy analysis in *Albernaz* thus merged with this treatment of the congressional intent issue. Similarly here, examination of statutory purpose will determine whether (1) Congress authorized cumulative punishment, and (2) whether § 2307 and § 703 are the same or separate and distinct offenses for double jeopardy purposes.

The traditional rule of statutory interpretation codified in § 23–112, the statute found controlling in *Whalen*, was first articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "where the same act . . . constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. The *Blockburger* rule was interpreted in *Whalen* as prohibiting consecutive sentencing since all the facts establishing the particular lesser offense were elements of proof of the greater offense. The fact that rape was not always a necessary ingredient of felony murder was not viewed as material to the *Blockburger* test. But *Whalen* also instructs that the "dispositive question" is whether Congress "authorized cumulative punishments" for different statutory offenses. *Whalen v. United States, supra* at 688–89, 100 S.Ct. at 1436. Accordingly, our review is limited to assuring that the sentencing court does not exceed its legislative mandate by imposing multiple punishments for the same offense. *Brown v. Ohio, supra* at 165, 97 S.Ct. at 2225. Here, however, unlike in *Whalen*, we are not guided in our

analysis by § 23–112, for that statute requires automatic application of the *Blockburger* test only in connection with the presumption in favor of consecutive sentences. Since appellant's sentences are concurrent, not consecutive, we are free to determine legislative intent without restriction to any single rule of statutory construction. Moreover the Supreme Court has recognized that "[t]he *Blockburger* test is a 'rule of statutory construction' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v. United States, supra* —— U.S. at ——, 101 S.Ct. at 1141 (*Blockburger* test applied because nothing in legislative history discloses contrary intent).

■ We note, first, that concurrent as well as consecutive sentences constitute multiple punishment for purposes of double jeopardy and are persuaded that a concurrent sentence for conviction of a separate offense, while not entailing a lengthier incarceration, nonetheless implicates possible collateral consequences which effectively result in "multiple" or "cumulative" punishment. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Waller v. United States*, D.C.App., 389 A.2d 801, 808 n.8 (1978), *appeal dismissed and cert. denied*, 446 U.S. 901, 100 S.Ct. 1824, 64 L.Ed.2d 253 (1980) ("It is immaterial to this [double jeopardy] analysis that appellant . . . was sentenced concurrently for conviction of the underlying felony.") As to the question of whether Congress intended multiple punishment for a defendant convicted of threats under § 22–2307 and obstruction of justice under § 22–703 on the basis of a single transaction,[8] our review of the language and history of these statutes leads us to conclude that Congress did not consider

---

8. In *Albernaz v. United States, supra*, a single agreement resulted in consecutive sentencing for violation of two statutes. The Court stated that "[i]t is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double

Jeopardy Clause." *Id.* —— U.S. at ——, 101 S.Ct. at 1143, citing *Harris v. United States*, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).

them greater and lesser included offenses of each other,[9] or otherwise the "same" offense within the meaning of double jeopardy analysis.

■ The two offenses for which appellant was convicted are plainly not identical in terms of language. Section 22–2307 prohibits the threatening "to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part." Section 22–703(a) can be divided into three separate offenses: (1) corruptly, by threats or force, endeavoring to influence, intimidate, or impede any juror, witness, or officer; (2) willfully endeavoring by means of bribery, misrepresentation, intimidation, or force or threats of force, to delay or prevent communication to a criminal investigator; and (3) injuring a person or his property because of their giving information to such investigator. *See United States v. Bowman*, 197 U.S.App.D.C. 246, 250, 609 F.2d 12, 16 (1979) (similarly subdividing the federal obstruction of justice statute, 18 U.S.C. § 1503 (1976)). Appellant was convicted and sentenced for the first of these offenses.

The terminology of §§ 22–2307, –703 leaves no doubt that they proscribe different offenses since each includes provisions not included in the other. Section 22–2307 prohibits specific types of threats, regardless of their purpose. Section 22–703 prohibits *inter alia* any type of threat so long as it is made with a specific purpose. Thus conduct prohibited by the threats statute would not necessarily be prohibited under the obstruction of justice statute. For example, a threat to a person's personal or business reputation would not be punishable under § 22–2307.[10] Conversely, conduct prohibited under the obstruction of justice statute would not necessarily be prohibited by the threats statute because § 22–703 prohibits specified conduct effected by means of force, not only by threats.[11] Section 22–2307 only prohibits certain threats of force, not the use of force.

Even more striking are the disparate purposes of the two statutes. The one, obstruction of justice, "is intended to insulate the criminal justice system from corruption." *Hall v. United States*, D.C.App., 343 A.2d 35, 39 (1975). The other, threats, was enacted to protect the private citizens and businesses of the District of Columbia against extortion.[12] Even though we have said that § 22–2307 does not require proof of specific intent to extort, *United States v.*

---

9. "[A] greater offense is ... by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Brown v. Ohio supra*, 432 U.S. at 168, 97 S.Ct. at 2226. Therefore "the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser included offense." *Id.* at 169, 97 S.Ct. at 2227. (footnote omitted).

10. A conviction for a threat to tell a witness' family about her prostitution unless she agrees not to testify was upheld under the federal obstruction of justice statute in *Courtney v. United States*, 390 F.2d 521, 523 (9th Cir.), *cert. denied*, 393 U.S. 857, 89 S.Ct. 98, 21 L.Ed.2d 126 (1968). Such conduct would not be prohibited under § 22–2307.

11. Section 22–703 also proscribes bribery, misrepresentation, and any other injury to a person or his property made with the design of obstructing justice. As explained in our discussion above, these provisions of the statute are properly viewed as setting forth separate offenses.

12. Section 22–2307 originates from an amendment to the Omnibus Crime Control and Safe Streets Act of 1968, proposed by Senator Tydings, then Chairman of the Senate District of Columbia Committee's Subcommittee on Business and Commerce who stressed that the bill was designed

to correct what appears to be a grave and damaging situation right here in Washington which threatens the commercial life of the city.

Every day reports come in, not only to me, but to my colleague from Maryland and the Senators from Virginia, of Washington merchants, and Marylanders and Virginians who own stores in the District of Columbia, who are being threatened and abused by extortionists and thieves. Every day, thugs walk into stores and demand or just take merchandise. And if the owner tries to stop them, they threaten to burn down his store. We hear of threats to merchants that if they attempt to rebuild stores burned out in the recent riots, they will be destroyed again. We hear reports of shakedowns and the pro-

*Young,* D.C.App., 376 A.2d 809 (1977), the express legislative concern to prohibit extortion and like conduct by together enacting §§ 22–2306 (prohibiting extortion) and –2307 cannot be ignored. *See id.* at 814–16 (Mack, J., dissenting). This concern is totally unrelated to the societal interest in protecting the administration of criminal justice from corruption and undue influences and is strong evidence that Congress did not intend to proscribe the same offense in §§ 22–703 and –2307.

Moreover, the offenses of threats and obstruction of justice lack the "inherent relationship" required to apply the doctrines of merger and lesser included offenses.[13] *Hall v. United States, supra,* at 39, quoting *United States v. Whitaker,* 144 U.S.App.D.C. 344, 349, 447 F.2d 314, 319 (1971). *Whitaker* held that such a relationship requires the greater and lesser offenses to "relate to the protection of the same interests." *Id.* In *Hall,* this court ruled that appellant's charge of simple assault, D.C.Code 1973, § 22–504, did not merge into his conviction for obstruction of justice, explaining that assaulting a witness is only one of a number of ways to obstruct justice and that other acts, such as blackmail or threats of violence could support such a charge. *Hall v. United States, supra* at 39. Similarly, threatening a witness is a way to obstruct justice under the terms of § 22–703.

Our conclusion is strengthened by the disparity in punishment for the two offenses. Conviction for obstruction of justice under § 22–703 carries a maximum fine of $1,000 or a maximum three year term of imprisonment, or both. The penalty for threatening to kidnap or injure a person or damage his property is a maximum of $5,000 or twenty years' imprisonment, or both. It is difficult to see how an offense carrying a twenty year maximum sentence could merge into an offense carrying a three year maximum sentence. The United States Court of Appeals for the Eighth Circuit has stated that

> [A] lesser included offense must be both *lesser* and *included.* These requirements can only be met where the included offense involves fewer of the same constituent elements as the charged greater offense and where the claimed lesser offense has a lighter penalty attached to it than does the charged offense. [*United States v. Cady,* 495 F.2d 742, 747 (8th Cir. 1974) (emphasis in original).]

And, in an earlier case, the Ninth Circuit refused to find a merger of offenses, because it was

> not disposed to hold that the included offense rule is meant to apply where the claimed "lesser" or included offense prescribes a greater minimum punishment than the so-called "greater" or including offense. [*James v. United States,* 238 F.2d 681, 683 (9th Cir. 1956).]

We agree that the legislature could not have intended two separate statutory offenses to be greater and lesser included offenses of each other where the offense with the seemingly fewer constituent elements, here the threats offense, carries a much more severe penalty than an alleged greater offense.

---

tection racket here in the District of Columbia.

[T]his amendment, ... would make extortion and transmission of threats to persons and property a felony punishable by $5,000 or 20 years' imprisonment, or both. [114 Cong. Rec. 14778 (1968) (remarks of Sen. Tydings).]

**13.** Under the merger doctrine, a lesser offense will merge into a greater offense if guilt of the lesser offense "is necessarily established by proof of the greater offense." *Fuller v. United States,* 132 U.S.App.D.C. 264, 293, 407 F.2d

1199, 1228 (1968) (en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969) (footnote omitted). Under the lesser included offense doctrine, the prosecution or the defendant is entitled to have the jury instructed that they may find guilt on a lesser included offense if (1) all elements of the lesser offense are included within the offense charge, and (2) there is a sufficient evidentiary basis for the lesser charge. *Rouse v. United States,* D.C. App., 402 A.2d 1218, 1220 (1979), citing *Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

Applying the *Blockburger* test to the facts of this case does not alter our conclusion. *Blockburger* says that two offenses are not the same for purposes of double jeopardy if each requires proof of a fact that the other does not. In instructing the jury on the obstruction of justice counts, the trial court explained:

> [T]here are four elements to this offense.
>
> The first is, that the complainant in that case... was a witness....
>
> \* \* \* \* \* \*
>
> The second element ...: That the defendant knew or had reason to know that the complainant was to be a witness in the case ....
>
> The third element, that the defendant corruptly endeavored to influence, intimidate or impede the complainant in the discharge of his duties by means of threats *or force.*
>
> And the fourth element, that the defendant had the specific intent to influence, impede or intimidate the complainant in the discharge of his duties as a witness.
>
> However, it is not necessary that the witness actually be influenced, intimidated or impeded in the discharge of his duties. [Emphasis added.]

The jury was then instructed on the essential elements of the threats charges:

> There are three elements to the offense of threats.
>
> First is, that the defendant made a declaration of an intent to injure the complainant.
>
> Number two, the words used were of such a nature as to convey menace or fear of bodily harm to the ordinary average person. Mere exaggerated statement, or statements made in jest, or idle talk, are not threats.
>
> And the third and final element is, at the time of the commission of the offense of threats, the defendant intended to speak the words which constituted the threat.

As these instructions indicate, only one out of the four essential elements of an obstruction of justice charge involves proof of threats. However, such proof was not absolutely necessary to appellant's conviction since proof of force would also have led to his conviction. The testimony adduced at trial supports a jury finding that appellant had used force to endeavor to influence, intimidate or impede the witnesses by aiding and abetting his brother, Melvin Ball, in assaulting, pushing, grabbing and chasing the witnesses.

Moreover, appellant was acquitted of threats against one witness, although the jury found him guilty of obstructing justice with regard to the same conduct toward the same witness. And while it is true that juries may render inconsistent verdicts on a multiple-count indictment as a legitimate means of compromise, *see United States v. Smith*, D.C.App., 337 A.2d 499 (1975), it is also possible that this jury found appellant guilty of obstructing justice exclusively by means of force directed at that one witness. Thus it cannot be maintained on the facts of this case that proof of guilt on the obstruction of justice counts necessarily established guilt of the threats counts. *See Fuller v. United States*, 132 U.S.App.D.C. 264, 293, 407 F.2d 1199, 1228 (1968) (en banc), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). Even under the *Blockburger* rule, a conviction for obstruction of justice could be had on the facts of this case without proving any or all of the elements of the offense of threats. *Compare Whalen v. United States, supra*, 445 U.S. at 693–94, 100 S.Ct. at 1438–1439 (conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape).

*Affirmed.*