James P. JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 81-792.

District of Columbia Court of Appeals.

Jan. 13, 1983.

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER,* MACK, FERREN,* PRYOR, BELSON, and TERRY,** Associate Judges, and GALLAGHER,* Associate Judge, Retired.

ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing and rehearing en banc, and of appellee's response thereto, it is

ORDERED for the merits division that appellant's petition for rehearing is denied. It appearing that no judge of this court has called for a vote thereon, it is

FURTHER ORDERED that appellant's petition for rehearing en banc is denied.

Separate statements of Associate Judge NEBEKER and Associate Judge MACK follow.

NEBEKER, Associate Judge:

Reasons for denying action on the Petition for Rehearing or Rehearing En Banc. The appellant has filed a Petition for Rehearing and Rehearing En Banc. On brief, he raised the issue of a violation of the right to a speedy trial. In an unpublished Memorandum Opinion and Judgment dated October 1, 1982, the panel discussed each of the factors which must be con-

\* Denotes merits division.

\*\* *Associate Judge* TERRY did not participate in this matter.

sidered by the court when confronted with this constitutional claim. With regard to the defendant's assertion of the right to a speedy trial, the panel held that "[a]ppellant asserted his right to a dismissal on July 31, 1980, approximately 14 months after his initial arrest. This delay in the assertion of his right substantially weakens any inference of prejudice to appellant resulting from the delay." (Citations omitted.) This language prompted appellant to argue that such a holding ignored binding legal precedent [1] establishing that the filing of a bond review motion satisfied the assertion criterion. I find the "binding precedent" argument to be flawed because of an underlying error so fundamental in the asserted precedent as to render it outside the rule of law. Accordingly, en banc consideration is legitimately denied by the court.

This question of weighing the assertion of the speedy trial right stems from a misinterpretation of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which originated in *United States v. Calloway,* 164 U.S.App.D.C. 204, 505 F.2d 311 (1974), and was unfortunately picked up by this court in *Tribble v. United States,* 447 A.2d 766 (D.C.1982), *Strickland v. United States,* 389 A.2d 1325 (D.C.1978), and *Branch v. United States,* 372 A.2d 998 (D.C. 1977). The issue centers upon the propositions that the government must assume that every defendant confined pretrial desires a speedy trial unless he indicates to the contrary and that a bond review motion is to be considered the functional equivalent of the assertion of the right to a speedy trial by the defendant.

In *Barker,* the United States Supreme Court adopted a balancing test to be used in assessing the merits of speedy trial claims. The defendant's assertion of the right to a speedy trial was identified by the Court as one factor which should be considered. Before establishing the assertion of the right

1. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), and D.C.App.R. 40(a).

as merely one factor to be identified and weighed, the Court rejected two alternative approaches taken by various courts and legislatures. These alternative approaches were (1) the establishment of a specified time period within which a criminal defendant must be offered a trial, and (2) the waiver of the right to a speedy trial for any period of time prior to the defendant's demand for a trial. *Barker v. Wingo, supra,* 407 U.S. at 523–30, 92 S.Ct. at 2188–92. The latter approach, the so-called demand-waiver rule, was explored by the Court in some depth and then rejected. The Court recognized that the bases for this rule were the "assumption that delay usually works for the benefit of the accused and . . . the absence of any readily ascertainable time in the criminal process for a defendant to be given the choice of exercising or waiving his right." *Id.* 407 U.S. at 526, 92 S.Ct. at 2190. The Court noted that delay also involves negative repercussions for the accused, stating that "a defendant confined to jail prior to trial is obviously disadvantaged by delay as is a defendant released on bail but unable to lead a normal life because of community suspicion and his own anxiety." *Id.* The Court then declared that:

We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without ade-

quately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection. *Id.* 407 U.S. at 528–29, 92 S.Ct. at 2191.

The United States Court of Appeals for the District of Columbia Circuit in *Calloway* ignored the *Barker* Court's conclusion regarding the assertion of the right to a speedy trial factor, relying instead on the language quoted above concerning the possible disadvantages to defendants incarcerated or released on bail pending trial. The *Calloway* court took this language to mean that "when the defendant is confined pretrial the government must assume he desires a speedy trial unless he indicates the contrary." *United States v. Calloway, supra,* 164 U.S.App.D.C. at 210, 505 F.2d at 317. A second proposition announced by the *Calloway* court, that a "motion for release was for all relevant purposes the functional equivalent of pressing [the] right to a speedy trial," is admittedly a completely unsupported extension of the initial assumption. *Id.* at 209, 505 F.2d at 316. The facts in *Barker* refute both of these *Calloway* conclusions.

In *Barker,* the defendant was incarcerated for ten months before being released on bail. The defendant remained free on bail for over four additional years. When weighing the speedy trial criteria, the Court in *Barker* found "minimal" prejudice and, more importantly, the fact that "Barker did not want a speedy trial." *Barker v. Wingo, supra,* 407 U.S. at 534, 92 S.Ct. at 2194. The Court noted that "despite the fact that counsel had notice of the motions for continuances, the record shows *no action whatever* taken between October 21, 1958, and February 12, 1962, that could be construed as the assertion of the speedy trial right." *Id.* (footnote omitted; emphasis added). This holding was made despite the fact that during this period action with regard to *bail* had been taken, as bail was fixed at $5,000 on June 3, 1959. *Barker v. Commonwealth,*

385 S.W.2d 671, 674 (Ky.1964). The fixing of that bond had to be prompted by affirmative action either reducing a previously set bail or vacating an order holding Barker without bond. In no way did the Supreme Court consider this tantamount to the assertion of the speedy trial right. In fact, the opposite is inescapable. Barker was not deemed to have asserted the speedy trial right by virtue of his ten-month confinement or his bail efforts. Nor is this court free to embellish on the Sixth Amendment right by its own interpretation. *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975).

Given the facts and analysis of *Barker,* one must conclude that there is no support for the propositions the *Calloway* court ascribed to the opinion. Indeed, *Barker* stands square against those propositions. This court has today, therefore, refused to perpetuate blindly the *Calloway* court's error.

MACK, Associate Judge:

I do not find it necessary to state a reason for my vote to deny a petition for rehearing en banc. I am moved to write, however, because I believe that Judge Nebeker's statement conveys an erroneous impression as to this court's action. I need only state the obvious—that there are many reasons why individual judges vote on individual issues, and repeat what Judge Nebeker has said in his statement:

This question of weighing the assertion of the speedy trial right stems from a misinterpretation of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which originated in *United States v. Calloway,* 164 U.S.App.D.C. 204, 505 F.2d 311 (1974), and was unfortunately picked up by this court in *Tribble v. United States,* 447 A.2d 766 (D.C.1982), *Strickland v. United States,* 389 A.2d 1325 (D.C. 1978), and *Branch v. United States,* 372 A.2d 998 (D.C.1977).

\* \* \* \* \* \*

This court has today, therefore, refused to perpetuate blindly the *Calloway* court's error.

In my view, had the full court desired to overrule three of its prior opinions, it would have voted to grant the petition in this case.