**James S. SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–1232.**

District of Columbia Court of Appeals.

Argued June 18, 1991.
Decided Sept. 26, 1991.

John T. Moran, Washington, D.C., appointed by this court, for appellant.

William C. Snyder, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Linda L. Mullen, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and FARRELL, Associate Judges.

FERREN, Associate Judge:

In January 1990, the trial court suspended imposition of a sentence after appellant had pleaded guilty to attempted unlawful use of a vehicle, D.C.Code §§ 22–103, –3815 (1989). The court placed him on probation for one year under the Youth Rehabilitation Act (YRA), D.C.Code § 24–803(a) (1989 & Supp.1990). Nine months later, the trial court revoked appellant's probation and sentenced him as an adult to 180 days in prison, with all but 30 days suspended, placing him on work release to be followed by one year of supervised probation conditioned on appellant's attending school or maintaining fulltime employment. Appellant argues that imposition of an adult sentence upon revocation of his YRA probation was illegal under D.C.Code §§ 24–104, –801 to –807 (1989). We conclude that, by its plain wording, § 24–104 does not preclude the trial court from revoking YRA probation (ordered in lieu of imposition of sentence) and then imposing an adult sentence. We also conclude, however, that if the trial court wishes to incarcerate a youth offender as an adult after revocation of YRA probation, § 24–803(d) requires the trial court to make an explicit finding on the record that the youth offender no longer will "derive benefit" from YRA supervision (although the court need not provide supporting reasons). Because the trial court, in revoking appellant's probation, did not make such an explicit finding, we must remand the case for further proceedings.

I.

On December 4, 1989, appellant—then eighteen years old—pleaded guilty to the misdemeanor offense of attempted unauthorized use of a vehicle. After a presentence investigation, the trial court suspended imposition of sentence, placed appellant on supervised probation for one year under

the YRA, D.C.Code § 24–803(a),[1] and expressly ordered that while on probation appellant must undergo drug testing as directed by the probation office, maintain employment, and participate in vocational and educational training. The trial court gave appellant the following explicit warning:

> It is important you comply with all of the conditions of probation. If your probation officer decides to tell you to go and report for drug testing every single week, even though you are negative and it is inconvenient, just go. Most people do not make it on probation, even people like yourself who really ought to. Something happens along the way and they stop complying, and they come back to me a single violation, and they end up with probation revoked, and I almost never give probation twice.
>
> So, if you have a revocation, it means you are going to see jail time. That is why if you can just do everything the probation officer asks you to for a year, you can complete your probation successfully and get this behind you and finish.

By August 1990, the Social Services Division of the Superior Court had filed a probation violation report with the court, citing appellant's failure to keep scheduled appointments with his probation officer in February, April, and June 1990; his failure to inform the probation office of his new address after moving; and his failure to participate in the Urine Surveillance Program for drug treatment and detection. The trial court issued an order to show cause why appellant's probation should not be revoked.

At the September 1990 show cause hearing, appellant explained why he had missed his appointments: "I completely forgot about my probation, Your Honor." The probation officer nonetheless recommended that appellant, whom he described as "a very young man," remain on probation and that the court continue the show cause hearing for sixty days to "see if he contin-

ues to perform." The probation officer also corrected the probation violation report, stating that appellant in fact had complied with the Urine Surveillance Program by submitting negative urine samples on six different dates as required.

The trial judge, however, revoked appellant's probation because "I don't hear any rational justification for him not only not appearing, but once in six months, but making himself unavailable ... [and] requiring Probation to track him down." After finding that work release would not be available at the YRA facility, the court sentenced appellant as a adult on the charge of attempted unauthorized use of a vehicle to 180 days of incarceration, with all but 30 days suspended, and placed appellant on work release, to be followed by supervised probation for one year conditioned on appellant's attending school or maintaining full-time employment.

## II.

Appellant argues that the trial court's imposition of an adult sentence upon revocation of his YRA probation violated D.C.Code § 24–104, which provides in part:

> At any time during the probationary period the court may ... revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence.

In interpreting this section, appellant relies on *Mulky v. United States*, 451 A.2d 855 (D.C.1982), in which we held that under § 24–104 "the trial court [on revoking probation] has discretion to impose any sentence that the court could have imposed upon conviction, provided that the new sentence is no more severe than the original sentence." *Id.* at 856; *see Jones v. United States*, 560 A.2d 513, 516 (D.C.1989). Appellant contends that because imposition of an adult sentence is inherently more severe

---

1. D.C.Code § 24–803 (1989 & Supp.1990) provides:

   (a)(1) If the court is of the opinion that the youth offender does not need commitment, it

may suspend the imposition or execution of sentence and place the youth offender on probation.

than a YRA sentence, *see Moore v. United States*, 468 A.2d 1331, 1334 (D.C.1983),[2] the trial court violated § 24–104 when it sentenced him as an adult to 180 days of imprisonment.

■ Appellant's reliance on *Mulky* and *Moore*, however, is misplaced.[3] In this case, it is irrelevant whether an adult sentence is more severe than a YRA sentence. D.C.Code § 24–104 provides, in the sentence following the one on which appellant relies: "If imposition of sentence was suspended, the court may impose any sentence which might have been imposed." *Id.* Here, the court clearly indicated in its judgment and probation order, and appellant concedes, that it had suspended imposition of any sentence on appellant's conviction for attempted unauthorized use of a vehicle. Therefore, under the plain language of § 24–104, the court was permitted, on revoking appellant's probation, to impose "any sentence which might have been imposed." Appellant's sentence of 180 days of incarceration with all but 30 days suspended was well within the statutory penalty for attempted unauthorized use of a vehicle. *See* D.C.Code § 22–103 (1989);[4] *Greenwood v. United States*, 225 A.2d 878, 880 (D.C.1967). The sentence was therefore lawful under § 24–104.

### III.

Appellant also argues, in the alternative, that the YRA does not contain a provision enabling the trial court to rescind the youth offender status of a defendant placed on probation. Unless such a provision exists, he says, § 24–104 cannot be read to permit the trial court to impose an adult sentence that would nullify the court's original finding that a youth offender would benefit from YRA treatment. Such broad sentencing power, he contends, would undermine the purposes of the YRA.[5]

2. In *Moore*, we noted that a sentence under the Federal Youth Corrections Act (FYCA), 18 U.S.C. §§ 5005–5026 (1982) (*repealed by* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 218(a)(8) 98 Stat. 1837, 2027), "differs from the usual criminal sentence both in its purpose—its 'basic theory ... is rehabilitative'—and its effect—the 'conditions and terms' of confinement are different from those 'a defendant would undergo in an ordinary prison.'" *Moore*, 468 A.2d at 1334 (quoting *Carter v. United States*, 113 U.S.App.D.C. 123, 125, 306 F.2d 283, 285 (1962)). Because of the "recognized benefits of treatment under the FYCA," we concluded that an FYCA sentence of up to six years was not more severe than the original adult sentence of one year of imprisonment with execution suspended pending appellant's successful completion of two years of probation. *Moore*, 468 A.2d at 1332, 1335.

In order to fill the void created by Congressional repeal of the FYCA, the Council of the District of Columbia passed the Youth Rehabilitation Amendment Act of 1985 (YRA), D.C.Code §§ 24–801 to –807 (1989). Appellant stresses, and we agree, that the purposes and effects of the D.C. Youth Act—"rehabilitation, treatment, segregation, and expungement—are virtually identical to the purposes and effects of the FYCA ..." *United States v. Wheeler*, 115 Daily Wash.L.Rptr. 2025, 2031 (Super.Ct. Sept. 25, 1987) (upon revoking probation, court imposed 18 month sentence under YRA even though original adult sentence was one year). Appellant argues that our analysis in *Moore* suggests that an adult sentence is necessarily more severe than a YRA sentence; consequently, *Moore* should invalidate appellant's sentence. Because

we do not believe that appellant's adult sentence was invalid under § 24–104, we need not apply this reasoning.

3. Both *Mulky* and *Moore* concerned a resentencing after probation had been revoked, not a first sentencing after imposition of sentence had been suspended. Appellant, however, also relies on *Cole v. United States*, 384 A.2d 651, 652 (D.C.1978), in which we held that "[a]n offender cannot be sentenced both under the FYCA and as an adult, the two alternatives are mutually exclusive" because such sentences would require the court to make inconsistent findings that the offender would both benefit and not benefit from treatment as a youth offender. Again, the *Cole* holding is not relevant here because the YRA eligibility and ineligibility determinations were sequential, not simultaneous.

4. D.C.Code § 22–103 (1989) states:
   Whoever shall attempt to commit any crime ... shall be punished by a fine not exceeding $1,000 or by imprisonment for not more than 1 year, or both.

5. The purpose of the YRA is "to provide rehabilitation opportunities for deserving youth adult offenders between the ages of 18 and 22 while incarcerated, and at the same time fully protect the public safety by enabling the court to impose a maximum penalty where warranted." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 6–47, YOUTH REHABILITATION ACT OF 1985 (COMMITTEE REPORT), 2 (1985). According to the Council, the primary objectives of the Act are:

■ Section 24–803 lists the court's sentencing alternatives under the YRA:

(a)(1) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation....

(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may sentence the youth offender for treatment and supervision pursuant to this chapter up to the maximum penalty of imprisonment otherwise provided by law....

(c) Where the court finds that a person is a youth offender and determines that the youth offender will derive benefit from the provisions of this chapter, the court shall make a statement on the record of the reasons for its determination. The youth offender shall be entitled to present to the court facts that would affect the decision of the court to sentence the youth offender pursuant to the provisions of this chapter.

(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) of this section, then the court may sentence the youth offender under *any other* applicable penalty provision.

\* \* \* \* \* \*

(f) Subsections (a) through (e) of this section provide sentencing alternatives

1) to give the court flexibility in sentencing a youth offender according to his individual needs; 2) separation of youth offenders from more mature, experienced offenders; and 3) opportunity for a deserving youth offender to start anew through expungement of his criminal record.
*Id.*

6. This interpretation of § 24–803 is consistent with the legislative history of the YRA. Nothing in the Council Report suggests that the Council intended to prohibit the trial court from imposing adult sentences on YRA offenders who fail to meet the conditions of their probation. Rather the stated legislative purpose was to afford the courts an option to segregate "deserving"

*in addition to* the options already available to the court.

(Emphasis added). We conclude that subsection (d) authorizes the court to rescind the YRA status of any youth offender—including those placed on probation pursuant to subsection (a)—and to impose an adult sentence if (but only if) the court finds that "the youth offender will not derive benefit from treatment" in a YRA facility. This conclusion follows from the statute's plain language. First, the trial court's power under subsection (a) to "suspend the imposition or execution of sentence and place the youth offender on probation" clearly contemplates the possibility that probation may be revoked. Second, in looking for what the trial court may do upon such revocation, we find that the statute provides for two possibilities: continued treatment under the YRA, § 24–803(b), or a sentence "under any other applicable penalty provision" if the court "shall find that the youth offender will not derive benefit from [YRA] treatment," § 24–803(d).[6] In this case, the trial court obviously elected to proceed under subsection (d). The question, then, is whether the court complied with the statutory requirement that, in electing that subsection, the court "shall *find* that the youth offender will not derive benefit from [YRA] treatment...." D.C.Code § 24–803(d) (1989) (emphasis added).[7]

■ The fact that the court imposed an adult sentence was arguably an implicit finding of no benefit under the YRA. But must that finding be explicit? Under the now-repealed Federal Youth Corrections Act (FYCA), 18 U.S.C. § 5010(d) (1982),[8]

youth from adult offenders while granting the courts the flexibility "to impose a maximum penalty where warranted." *See supra* note 5.

7. It appears from the record that the trial court ordered appellant incarcerated in an adult prison in part because the court wanted to maintain his job and work release; work release not available at the YRA facility. The court, however, did not explicitly determine that appellant would not benefit from continued YRA treatment and supervision.

8. 18 U.S.C. § 5010(d) (1982) reads:

(d) If the court shall find that the youth offender will not derive benefit from treat-

see supra note 2, we held, following the Supreme Court, that "an *express* finding of no benefit must be made on the record." *(Curtis) Smith v. United States*, 330 A.2d 519, 522 (D.C.1974) (emphasis in original) (quoting *Dorszynski v. United States*, 418 U.S. 424, 425, 94 S.Ct. 3042, 3044, 41 L.Ed.2d 855 (1974)).[9] Similarly, the Court held that, under the FYCA, when a trial judge imposes a consecutive adult sentence on an offender serving an FYCA sentence and converts the balance of the FYCA sentence to an adult sentence, the judge must make "an explicit 'no benefit' finding with respect to the remainder of the [F]YCA sentence." *Ralston v. Robinson*, 454 U.S. 201, 219, 102 S.Ct. 233, 245, 70 L.Ed.2d 345 (1981) (footnote omitted). The Supreme Court has reasoned that an explicit, not implicit, finding of no benefit "insure[s] that the sentencing judge exercised his [or her] discretion in choosing not to commit a

youth offender to treatment under the Act." *Dorszynski*, 418 U.S. at 443, 94 S.Ct. at 3052–53. "To hold that a 'no benefit' finding is implicit each time a sentence under the Act is not chosen would render [18 U.S.C.] § 5010(d) nugatory...." *Id.* at 444, 94 S.Ct. at 3053. The language of D.C.Code § 24–803(d) at issue here is virtually identical[10] to 18 U.S.C. § 5010(d) at issue in *Dorszynski*, and none of the legislative history of the YRA (or of § 24–803(d) in particular) indicates a desire to depart from the well-established interpretation *Dorszynski* put on that language. We therefore see no reason why we should not apply to YRA § 24–803(d) our FYCA reasoning, *see (Curtis) Smith*, 330 A.2d at 522, derived from the Supreme Court's *Dorszynski* ruling and thus require the trial court to make an explicit "no benefit" finding, although the court need not supply supporting reasons.[11]

ment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

9. In another case, we cited *Dorszynski* in overruling our earlier decision that required the trial court to give "'an explicit and reasoned determination that the defendant would *not* derive rehabilitative benefit from Youth Act treatment.'" *(Ronald) Smith v. United States*, 322 A.2d 592, 593 (D.C.1974) (quoting and overruling *Small v. United States*, 304 A.2d 641, 644 (D.C.1973)); *see Dorszynski*, 418 U.S. at 441, 94 S.Ct. at 3052 ("a sentence outside the [FYRA] need not be accompanied by a statement of reasons why the court chose such a sentence").

10. The only difference between the two subsections is that the federal act mentions subsections (b) and (c), whereas our local act mentions only subsection (b). That difference is not relevant to our discussion here.

11. "Ordinarily, Congress may be presumed to know the construction which has been given to prior statutory provisions, and to know their history, when it incorporates them into later legislation." *Office of People's Counsel v. Public Service Comm'n*, 477 A.2d 1079, 1091 (D.C.1984). The same reasoning applies to the Council of the District of Columbia. The record shows that some of the persons who testified before the Council mentioned the *Dorszynski* case. Furthermore, the Council's Committee Report reads:

The judge can sentence youth offenders differently from adult offenders (over 21 years old) if the judge finds that they would benefit from

Youth Act treatment, in which case the judge must state on the record the reasons for his or her determination. In this instance, the prosecutor may argue against such treatment. *The judge may also impose an adult sentence if he or she finds that there will be no benefit. The judge makes a decision on the basis of detailed information concerning the youth offender provided by disinterested third parties.* COMMITTEE REPORT, *supra* note 5, at 3 (emphasis added). It is true that the YRA worked a major change in sections (b) and (c) of the sentencing alternatives provisions of the FYCA. Under the FYCA, a sentencing judge could grant FYCA treatment without providing an explanation but could reject FYCA treatment only after indicating on the record that he or she had "considered the option of treatment under the Act and rejected it." *Dorszynski*, 418 U.S. at 443, 94 S.Ct. at 3053. The judge could reject FYCA treatment only by explicitly making a finding of "no benefit," although no accompanying reasons were required. *Id.* at 442–44, 94 S.Ct. at 3052–53. In practical effect, therefore, FYCA treatment was presumptively required for eligible offenders, subject to change through a finding of "no benefit." In contrast, YRA treatment is not available unless the judge makes "a statement on the record of the reasons" why "the youth offender will derive benefit." D.C.Code § 24–803(d). The Council wanted, in effect, to place a burden on the offender to show he or she would derive benefit, not a burden on the government to convince the court there would be no benefit. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, FIRST READING ON PROPOSED BILL No. 6–47, Youth Rehabilitation Act of 1985, at 46–49 (June 25, 1985) (remarks of Council members Rolark, Clarke,

In this case, the court did not make an explicit finding of record that, upon revocation of appellant's probation, he would "not derive benefit" from continued YRA treatment. Accordingly, we must remand the case for the trial court to address this issue.

### IV.

█ Finally, appellant argues that the trial court abused its discretion in revoking appellant's probation when it failed adequately to balance "the competing interests of the community in safety with the rehabilitative goals of probation." *Saunders v. United States*, 508 A.2d 92, 95 n. 6 (D.C.1986) (quoting *(Jacqueline) Smith v. United States*, 474 A.2d 1271, 1274 (D.C.1983)).

The decision to revoke probation is a matter committed to the sound discretion of the trial court and "typically involves a two step analysis: '(1) a retrospective factual question whether the probationer has violated a condition of probation; and (2) a discretionary determination by the sentencing authority whether violation of a condition warrants revocation of probation.'" *Saunders*, 508 A.2d at 95 (quoting *Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985)). Appellant concedes that he violated express conditions of probation by failing to keep his appointments with the probation officer and failing to inform the probation office of his changed address. Appellant contends, however, that the trial court erred in failing adequately to consider whether his violation of the conditions warranted revocation.

In *Saunders*, we relied on *Black*, 471 U.S. at 613, 105 S.Ct. at 2258–59, in concluding that the trial court need not expressly state on the record how it balances "the competing interests of the community in safety with the rehabilitative goals of probation." *Saunders*, 508 A.2d at 95 n. 6.

This is especially true where the probationer is afforded an opportunity to show "not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." *Black*, 471 U.S. at 612, 105 S.Ct. at 2258. Our review of the record supports the trial court's conclusion that appellant had violated the express conditions of his probation, that appellant did not provide any justifiable excuse for those violations, and that appellant contested the revocation. Under these circumstances, when appellant was afforded the procedural safeguards of written notice of the claimed violations and an opportunity to be heard, we find no abuse of discretion.

### V.

In sum, we conclude that appellant did not receive an unlawful sentence under D.C.Code § 24–104. When a trial court revokes probation ordered after suspension of sentence imposition, the court "may impose any sentence which might have been imposed [at the time of original sentence]." *Id.* However, because appellant was a youth offender, § 24–803(d) required the trial court to make an explicit finding on the record that appellant would "not derive benefit from" continued YRA treatment before the court could lawfully impose an adult sentence. Therefore, we remand the case for the trial court to determine whether appellant would have benefited from continued YRA treatment. If the court finds appellant would not have benefited, the judgment shall be deemed affirmed. If the court finds appellant would have benefited, appellant should be resentenced.

*Case remanded.*

and Ray). But this new trial court responsibility to express reasons for a finding of YRA benefit does not, on its face, obviate the need for the court expressly to find "no benefit," without supporting reasons, when denying YRA treatment. Given the Council's choice of statutory language in D.C.Code § 24–803(d) and the known *Dorszynski* gloss on that language, we must conclude the Council intended the trial court to make an express "no benefit" finding when denying YRA treatment to a youth offender.