Tycho VENEY, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–456.

District of Columbia Court of Appeals.

Argued En Banc Jan. 24, 1996.

Decided July 25, 1996.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Samia Fam, and Tana Lin, Public Defender Service, were on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, Elizabeth Trosman, Laura A. Cordero, and Karen E. Rhew, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, C.J., and FERREN, TERRY, STEADMAN, SCHWELB, FARRELL, KING, RUIZ and REID, Associate Judges.

ON REHEARING EN BANC

SCHWELB, Associate Judge:

Pursuant to the terms of a negotiated plea agreement, Tycho Veney was convicted of manslaughter while armed. D.C.Code §§ 22–2401, –3202 (1996). Through counsel, Veney, who was then nineteen years of age, requested the trial judge to sentence him as a youth offender pursuant to the District of Columbia Youth Rehabilitation Act (DCYRA or the Act), D.C.Code §§ 24–801 *et seq.* (1996). The judge declined Veney's request and sentenced Veney as an adult to a prison term of fifteen years to life.

Veney filed a timely appeal, contending that the judge failed to make an explicit finding that Veney would not derive benefit from sentencing as a youth offender, and that this omission rendered the sentence invalid. On April 20, 1995, a division of this court affirmed the judgment. *Veney v. United States,* 658 A.2d 625 (D.C.1995) (per curiam) (*Veney I*). The division stated that it was bound by *Peterson v. United States,* 657 A.2d 756, 763–64 (D.C.1995) (King, J., joined by Terry, J., concurring), in which a majority of a different division had concluded three weeks earlier that a "no benefit" finding is not required by the DCYRA. We subsequently vacated *Veney I* and granted rehear-

ing en banc. *Veney v. United States,* 666 A.2d 63 (D.C.1995) (*Veney II*).

The record in this case reflects that the judge was aware of his authority to order treatment of the defendant as a youth offender, considered that rehabilitative option, and consciously rejected it. Because, in our view, the DCYRA requires no more than that, we now affirm.

## I.

## TRIAL COURT PROCEEDINGS

### A. The Facts.[1]

This case had its genesis in a brutal killing by ambush. On February 28, 1992, Marc Locust was riding his bicycle to a convenience store which he apparently frequented. Appellant Veney, who had purchased a revolver about four weeks earlier, was pacing back and forth at a corner near the market. As Locust approached the store, Veney pulled the revolver from his waistband, pointed it at Locust, and shot him in the chest from a distance of six feet. The bullet pierced Locust's heart and lungs.

Locust, who was unarmed, fell from the bicycle and tried to run away. Veney gave chase and fired again; a second bullet grazed Locust's forehead. Minutes later, Locust was found by his brother in a gutter, bleeding and gasping for breath. Marc Locust then died. He was twenty-one years old.

Veney was arrested and gave a videotaped statement to the police. He revealed that he and Marc Locust had argued several summers earlier over a girl. He claimed that Locust had fired at him a few weeks before the killing, but he could not remember exactly where this occurred. Veney admitted that he shot Locust, and that he ran home and hid the revolver. He later threw the weapon into the river.

Veney was charged with first degree murder while armed and with associated weapons offenses. A plea agreement was negotiated, and Veney was permitted to plead guilty to

voluntary manslaughter while armed. The murder charge was dismissed.

### B. The Sentencing Proceedings.

In advance of sentencing, Veney's counsel presented to the court evaluations of her client by two psychologists and one psychiatrist. It is apparent from these evaluations that Veney is at least moderately retarded[2] and that he suffers from various mental and emotional disorders. He was abused by both parents, and he was apparently present when his mother shot his father. He has, on occasion, attempted suicide. There can be no doubt that he is a limited young man and that he grew up in most unfortunate circumstances.

The materials submitted by the defense also reveal, however, that Veney is an extremely dangerous individual. Since his teens, he has been engaged in numerous unlawful activities, including setting fires, cruelty to animals, stealing cars, destruction of property, fighting, and carrying a knife. He was committed to Saint Elizabeths Hospital and to the Receiving Home, and he spent two years at The Pines Treatment Center in Portsmouth, Virginia. He was released in June 1991. Then, according to the defense psychiatrist, Neil Blumberg, M.D., Veney

> returned to the District of Columbia and began associating with a delinquent crowd. He did not work, began drinking and abusing drugs, and eventually became involved in selling drugs, which became his primary means of support.

Veney's chosen lifestyle is especially dangerous, both for him and for others. In the words of defense psychologist Lanning E. Moldauer, Ph.D.,

> Mr. Veney is particularly poorly equipped for the role of drug dealer or street "hustler" where the action is likely to turn violent and the demands for making quick, accurate distinctions in life-and-death situations are all too great.

---

1. Our statement of the facts is taken substantially verbatim from *Veney I, supra,* 658 A.2d at 626–28 (concurring opinion).

2. When tested, Veney did not know the number of months in the year, believed that 10 minus 6 equals 7, and was unable to explain the word "repair."

In written submissions to the sentencing judge and at the sentencing hearing, the parties presented arguments for and against DCYRA sentencing. Veney's counsel asserted that his client was an appropriate candidate for rehabilitation, and that "[t]he court's greatest assurance for rehabilitating is to sentence him under the Youth Rehabilitation Act and commit him to the Lorton Youth Center." The prosecutor countered that

[t]here has been a lot of discussion about what would help Mr. Veney. I think the time has come to put the needs of the community ahead of those of Mr. Veney.

The prosecutor also stated that she had discussed with J. William Erhardt, Esq. of the Superior Court Criminal Division's Legal Assistance Branch the availability of psychiatric counselling both at the Youth Center and at the adult facility, and that although "[i]n theory the treatment's better [at the Youth Center]," it wasn't clear to Mr. Erhardt that this was so in practice.

The judge declined to sentence Veney pursuant to the DCYRA, and ordered that he be incarcerated for a period of fifteen years to life. He stated in some detail his reasons for rejecting the DCYRA option:

Mr. Veney, this is a difficult case. It's difficult because of your situation, it's difficult because of the victim. I can't overlook the fact that you have been carrying around a gun for a while and I cannot assure myself that you only had that gun for Mr. Locust, because of something that he had done to you, as opposed to having that gun for its general use whenever you felt it happened to be needed.

If you had gone to trial, you stood a chance of being convicted of offenses that when you add up the possible sentences would add up to 26 years to life, of which 25 years would have been a mandatory minimum, if you'd been convicted of all these three offenses.

The plea that you entered subjects you to a mandatory minimum sentence of 5 years if you're sentenced as an adult. And if you're sentenced as an adult, you will receive good time credits with respect to years over the [five-year] mandatory minimum.

With that I compare [the] Youth Act treatment where I have absolutely no control over the ultimate decision those folks would make when to release you. And although I don't think it would be a very wise decision for them to release you earlier than you would be released as an adult[,] [u]ltimately, the [c]ourt doesn't have any control over it.

This is a situation where you will receive the benefit of your bargain, but that is about it. A Youth Act sentence is inappropriate. I'm satisfied that your treatment as an adult will be just as good as it would be as a youth. Therefore, your request for sentencing under the Youth Rehabilitation Act is denied.

This appeal followed.

## II.

## THE STATUTORY SCHEME

The DCYRA provides that if a defendant is eligible by age [3] and offense [4] for sentencing as a youth offender, the court "may" order "treatment and supervision" pursuant to the Act. D.C.Code § 24–803(b). If the court finds that the youth offender "will derive benefit from the provisions of this chapter, the court shall make a statement on the record of the reasons for its determination." § 24–803(c). The Act goes on to provide that

[i]f the court shall find that the youth offender will not derive benefit from treatment under subsection (b) of this section, then the court may sentence the youth offender under any other applicable penalty provision.

§ 24–803(d). A statement of reasons is thus explicitly required when a DCYRA sentence is imposed, but there is no comparable requirement that the judge explain his reasons

---

3. The DCYRA is available to defendants under the age of twenty-two. See D.C.Code § 24–801(6).

4. Unlike the former Federal Youth Corrections Act (FYCA), 18 U.S.C. §§ 5010 et seq. (repealed 1984), the DCYRA is not available to defendants convicted of murder. See D.C.Code § 24–801(6).

for imposing an adult sentence. Finally, Section 24–803(f) provides that the sentencing alternatives provided by subsections (a) through (e) are "in addition to the options already available to the court."

There is obvious tension between the various subsections of Section 24–803. Section 24–803(b) states that the court "may" sentence an eligible offender pursuant to the Act, not that the court "shall" do so. Section 24–803(c) proscribes sentencing as a youth offender unless the judge both finds that the defendant will benefit and explains his reasons for that finding. Section 24–803(d), on the other hand, authorizes imposition of an adult sentence "if"—and thus arguably *only* "if"—the court finds no benefit. But Section 24–803(f) provides in effect that the sentencing options available to the judge prior to the passage of the Act remain available—a provision which makes sense only if the judge retains the authority to impose an adult sentence on *any* offender, regardless of any personal benefit which the defendant may or may not derive from youth offender sentencing.

Reconciliation of these provisions, and particularly of subsections (d) and (f), is not easy. A literal reading of (d) appears to run afoul of (f), and vice versa. The language of the DCYRA, read as a whole, is not plain, and a "plain language" approach alone is therefore insufficient to ascertain the true meaning of the Act. Accordingly, we must inquire into the background of the statute and consider the circumstances that led to its enactment.

Although there are significant differences between the DCYRA and the now-repealed FYCA, it is undisputed that the former was modelled on the latter. *See [James] Smith v. United States*, 597 A.2d 377, 380 n. 2 (D.C.1991). The FYCA, which was enacted in 1950, "focused primarily on correction and rehabilitation," and "[a]ll persons under 22 years of age at the time of conviction were made eligible for probation or treatment under the Act." *Dorszynski v. United States*, 418 U.S. 424, 433, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974). The statute was "designed to provide a better method for treating young offenders convicted in federal

courts in that vulnerable age bracket, to rehabilitate them and restore normal behavior patterns." *Id.*

Like the DCYRA, the FYCA provided:

If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

18 U.S.C. § 5010(d). In *Dorszynski*, the defendant contended that the sentencing judge lacked the authority under this provision to impose an adult sentence unless he made an explicit finding of "no benefit" and stated his reasons for that conclusion. He argued, in effect, that the Act restricted the judge's sentencing options and set a substantive standard which the judge must follow in choosing between treatment as a youth offender and adult sentencing. The Supreme Court unequivocally disagreed:

The authority to sentence a youth offender under "any other applicable penalty provision" is expressly reserved to federal trial courts by [18 U.S.C.] § 5010(d), and thus is within the permissible range of sentences which may be imposed under the Act. *The "no benefit" finding required by the Act is not to be read as a substantive standard which must be satisfied to support a sentence outside the Act,* for such a reading would subject the sentence to appellate review even though the sentence was permitted by the Act's terms, thereby limiting the sentencing court's discretion. We will not assume Congress to have intended such a departure from well-established doctrine without a clear expression to disavow it. As our review has shown, the exclusive sentencing power of district judges was acknowledged, and Congress' intention to affirm that power was clearly indicated.

418 U.S. at 441, 94 S.Ct. at 3051 (emphasis added). Indeed, "the [FYCA] was intended to increase the sentencing options of federal trial judges, *rather than to limit the exercise of their discretion whether to employ the newly created options.*" *Id.* at 440, 94 S.Ct. at 3051 (emphasis added); *see also Tribble v. United States*, 447 A.2d 766, 774 (D.C.1982). Accordingly, the Court concluded that

"[o]nce it is made clear that the sentencing judge has considered the option of treatment under the Act and rejected it, ... no appellate review is warranted." *Dorszynski*, 418 U.S. at 443, 94 S.Ct. at 3053.

Later in the *Dorszynski* opinion, the Court stated that

> [l]iteral compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act *and decided that the youth offender would not derive benefit from treatment under the Act.*

*Id.* at 444, 94 S.Ct. at 3053 (emphasis added). The italicized language, read in isolation, might be construed as requiring the judge, in making his sentencing determination, to focus specifically on the potential personal benefit to the defendant of youth offender treatment. Given the repeated references in the opinion to the optional character of FYCA sentencing, however, the Court could not have contemplated that statements by the trial judge declining to exercise the youth offender treatment option were to be rigorously parsed, as Veney now seeks to parse them, in order to assure that sufficient weight was being accorded to the defendant's personal benefit. On the contrary, the Court specifically stated that "[a]ppellate courts should not be subject to the burden of case-by-case examination of the record to make sure that the sentencing judge considered the treatment option made available by the Act." *Id.*

The FYCA was repealed by Congress in 1984. In 1985, the Council of the District of Columbia enacted the DCYRA, and thus reinstituted machinery for the rehabilitative treatment of youth offenders which the repeal of the FYCA had briefly made unavailable. The DCYRA, however, reflects a readily discernable shift in focus from its repealed federal counterpart. Under the FYCA, a judge seeking to impose an adult sentence was required to make a "no benefit" finding, whereas he could impose a youth offender sentence without making any finding at all. By contrast, the DCYRA provides that "where the court ... determines that the youth offender will derive benefit from

the provisions of this chapter, the court shall make a statement on the record of the reasons for its determination." D.C.Code § 24–803(c). No such statement of reasons is required where the court finds no benefit. *See* § 24–803(d). The DCYRA also explicitly states that the youth offender treatment options created by the Act constitute "sentencing alternatives *in addition to the options already available to the court.*" § 24–803(f) (emphasis added). Read literally, and without reference to subsection (c), subsection (f) means that the judge may impose any sentence which was authorized by law prior to the enactment of the DCYRA, but may *also* order youth offender treatment, which had not been available since the repeal of the FYCA. All told, the Act reverses in important respects the FYCA's tilt in favor of youth offender sentencing.

Finally, the DCYRA was enacted at a time when public concern about crime was at its zenith. It was passed less than three years after the citizens of this jurisdiction voted overwhelmingly for mandatory minimum sentences for armed offenses (as well as for certain other crimes). That legislation was precipitated, in part, by the devastation wrought by firearms. *See Lemon v. United States*, 564 A.2d 1368, 1379 (D.C.1989).

In enacting the DCYRA, the Council was fully aware of these concerns. The purpose of the DCYRA, as stated in the Judiciary Committee Report, was

> to provide rehabilitation opportunities for *deserving* young adult offenders between the ages of 18 and 22 while incarcerated, and at the same time [to] *fully protect the public safety by enabling the court to impose a maximum penalty where warranted.*

COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON THE JUDICIARY, REPORT ON BILL 6–47, YOUTH REHABILITATION ACT OF 1985 at 2 (1985) (emphasis added). The emphasized language belies any notion that the legislature was concerned solely with rehabilitative opportunities for young offenders. On the contrary, the imposition of maximum penalties, where necessary, was an option upon which the Council focused in enacting this very legislation. The use of the word "de-

serving" is also significant, for if the court views a defendant as "undeserving," e.g., because the crime was too severe, then, according to the Committee Report, DCYRA sentencing is not required or even appropriate.

## III.

### THE APPLICABLE STANDARD

■ With the foregoing background in mind, we turn to the task of reconciling the apparently conflicting provisions of the DCY-RA.

The government first broadly contends that notwithstanding a defense request for DCYRA treatment, the record need not reflect any inquiry—even an implicit finding—by the trial judge regarding the potential benefit to the defendant of treatment under the Act. We do not agree. Section 24–803(d) provides that the court may sentence the offender as an adult "*[i]f the court shall find that the youth offender will not derive benefit from treatment under subsection (b) of this section.*" (Emphasis added). Under the government's interpretation of the statute, the italicized language would be rendered totally ineffective, and the judge would be permitted to impose an adult sentence without considering Youth Act treatment. "A basic principle [of statutory construction] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous." *Thomas v. District of Columbia Dep't of Employment Servs.*, 547 A.2d 1034, 1037 (D.C.1988) (citations omitted). Moreover, Section 804(d) is for all practical purposes identical to the corresponding section of the FYCA, 18 U.S.C. § 5010(d), and as the Supreme Court stated in *Dorszynski,*

[t]o hold that a "no benefit" finding is implicit each time a sentence under the Act is not chosen would render § 5010(d) nugatory.

418 U.S. at 444, 94 S.Ct. at 3057. We are not prepared to read Section 24–803(d) in a manner which treats the words "[i]f the court shall find [no benefit]" as if they did not exist.[5]

We likewise find Veney's proposed construction of the Act to be unpersuasive. Veney contends that the judge must make a formal finding which focuses on the probability of rehabilitative benefit to the defendant, and that if no such formal finding is made, then sentencing as an adult is not permitted. He argues, in substance, that if the judge finds that the defendant can be rehabilitated, then the judge *must* sentence him as a youth offender rather than as an adult. This interpretation, in our view, accords insufficient consideration to subsection (c), which permits youth offender sentencing only if the judge has explicated his reasons for selecting such a disposition, and to subsection (f), which explicitly permits the judge to impose any sentence which was authorized by law prior to the enactment of the DCYRA. Veney's construction also runs afoul of the passages from the *Dorszynski* opinion, quoted at pp. 431–432 *supra,* in which the Court rejected both the contention that the FYCA created a substantive sentencing standard, 418 U.S. at 441, 94 S.Ct. at 3051–52, and any notion that appellate courts must review the record in every case to ensure that the sentencing judge adequately considered the treatment option provided by the FYCA. *Id.* at 444, 94 S.Ct. at 3053.[6]

---

**5.** The Judiciary Committee Report reveals that the Council was aware of the Supreme Court's decision in *Dorszynski.* The Council's retention of the FYCA's "no benefit" language might thus be viewed as an adoption of the Supreme Court's interpretation of the FYCA. *See, e.g., Capital Traction Co. v. Hof,* 174 U.S. 1, 36, 19 S.Ct. 580, 594, 43 L.Ed. 873 (1899). Because the DCYRA also contains relevant provisions not found in the FYCA, however, including in particular subsections 24–803(c) and (f), the Court's construction of the FYCA in *Dorszynski* does not fit the DCY-RA with precision.

**6.** Veney's counsel contended at oral argument that these passages of the *Dorszynski* opinion are essentially *dictum,* and that the holding of the case is that a "no benefit" finding was required. As we read *Dorszynski,* however, the Court's emphasis on the sentencing judge's discretion constituted the overriding theme of the opinion. Moreover, the existence of that discretion is recognized even more explicitly in the DCYRA. *See* § 24–803(f).

In order to reconcile subsections (d) and (f) and, insofar as possible, to accommodate the language of each of these provisions, we essentially adopt the government's "fall-back" position—Section 24–803(d) requires something, but not very much. We conclude that an adult sentence may be imposed if the record reflects that the judge was aware of the availability under the Act of youth offender treatment, that he considered that rehabilitative option, and that he rejected it. In construing the FYCA, which tilted substantially more in favor of youth offender treatment than the DCYRA does, the Supreme Court referred to "the manifest desire of Congress to assure that treatment under the Act be considered by the court *as one option whenever the youth offender is eligible for it.*" 418 U.S. at 443, 94 S.Ct. at 3053 (emphasis added). Because the Court in *Dorszynski* also contemplated a finding by the sentencing judge that "the youth offender would not derive benefit from treatment under the Act," *id.* at 444, 94 S.Ct. at 3053, and because, as we have seen, the DCYRA contains the same "no benefit" language, we are not prepared to dispense altogether with a "no benefit" finding, so long as the "no benefit" concept is properly understood in the context of the DCYRA as a whole.

If the words "no benefit" are read literally and in isolation, then they embrace *every* defendant, for youth offender treatment would surely confer *some* benefit on any potential candidate. *See, e.g.,* D.C.Code § 24–806(d) (providing for the setting aside of DCYRA convictions); *Lindsay v. United States,* 520 A.2d 1059, 1063 (D.C.1987). The Council obviously did not require that *all* young offenders be sentenced to treatment under the Act, and the parties agree that the statute refers to substantial rehabilitative benefit, rather than to something less than that.

Veney's attorney also conceded at oral argument, and we now hold, that the DCYRA was not intended to make the defendant's potential for rehabilitation a dispositive sentencing criterion which trumps all others. It

is surely not subject to dispute that incapacitation of the offender and prevention, deterrence, and punishment of crime have traditionally been appropriate considerations in the sentencing calculus. In *Dorszynski,* as we have seen, the Supreme Court declined to infer an intention on the part of Congress to restrict the sentencing judge's traditional discretion, and it explicitly held that the "no benefit" requirement did not establish a new or "substantive" standard. 418 U.S. at 441, 94 S.Ct. at 3052. We therefore cannot agree with any suggestion that the DCYRA requires a one-dimensional focus on the interests of the offender (to the exclusion of the victim, his family and the law-abiding citizens of the community). Properly understood in the context of the entire Act, the reference in Section 24–804(d) to "benefit" to the defendant means a rehabilitational benefit sufficient to outweigh other applicable considerations.

Veney appears to contend that the judge may base his decision on any rehabilitative benefit to the offender and on the safety of the community, but on nothing else. We conclude, to the contrary, that the judge may also consider other traditional factors, including general deterrence and punishment. Moreover, we will not second-guess the sentencing judge with respect to the weight to be accorded to rehabilitation, as against the need for incapacitation, deterrence, or punishment.[7]

## IV.

### THE SENTENCING OF VENEY

■ Applying the foregoing principles to the present case, we have no difficulty in concluding that the sentencing proceedings were in compliance with the Act, and that Veney's rights were fully protected. The judge was aware of his authority under the DCYRA to sentence Veney as a youth offender. He entertained defense counsel's claims that Veney was an appropriate candidate for rehabilitation. The judge expressly

---

7. Our reading of *Dorszynski* and of the DCYRA as not contemplating appellate reweighing of the various sentencing considerations necessarily means that we will not entertain contentions

based on a trial judge's alleged failure to say enough (or even to say anything) about the defendant's personal benefit.

evaluated, on the record, the potential benefits said to be available to Veney at the Youth Center.[8] He concluded, reasonably in our view, that the risk of danger to the community which a youth offender sentence would entail trumped any such benefits.[9] The judge's oral explanation of his decision, which we have quoted at p. 430 *supra*, reflects a thoughtful and conscientious discharge of his sentencing responsibilities.

It now appears, in hindsight, that the necessity for this appeal might well have been avoided if the judge had framed his comments in the language of the Act.[10] The phrase "no benefit," however, is not a sacred talisman, and *any* expression showing that the judge considered and rejected the rehabilitative option available under the Act is sufficient. Notwithstanding the judge's use of words other than those in the DCYRA, his articulation satisfied that statute. *See Dorszynski, supra,* 418 U.S. at 444, 94 S.Ct. at 3053; *Taylor v. United States,* 324 A.2d 683, 685 (D.C.1974). To order the judge to sentence Veney as a youth offender would be altogether unwarranted, for imposition of an adult sentence was well within the judge's discretion, and his decision to impose one is not subject to appellate second-guessing. To remand the case to the judge with directions to rephrase his explication of the sentence would be patently futile. Accordingly, the judgment appealed from is

*Affirmed.*[11]

WAGNER, Chief Judge, concurring in the judgment:

We granted *en banc* review to determine whether D.C.Code § 24–803(d) imposes procedural limitations or other preconditions upon the sentencing court before it can sentence an age eligible youth offender as an adult under other applicable penalty provisions. In *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), the Supreme Court answered this question for us when it interpreted an identical provision of the federal statute from which § 24–803(d) was copied.[1] The court

---

**8.** According to Veney, the record negates the judge's conclusion that opportunities for rehabilitative psychiatric treatment are not significantly better at the Youth Center than at Lorton's main facility. We agree with the government that "[i]t is precisely this kind of case-by-case examination that the Supreme Court rejected in *Dorszynski.*" *See* 418 U.S. at 444, 94 S.Ct. at 3053; *accord, Tribble, supra,* 447 A.2d at 774.

**9.** The judge correctly observed that, if he ordered youth offender treatment, he would have no control over the timing of Veney's release.

**10.** We note that Veney's attorney made no claim at the time of sentencing that the judge's explanation of the sentence was legally insufficient. If counsel had raised the point in the trial court, the judge could have resolved it on the spot and this appeal would probably have been unnecessary.

The government did *not contend before the division* that the "plain error" standard applies, but now seeks to invoke that standard before the en banc court. Because the imposition of the sentence ended the proceedings in the trial court, defense counsel could have raised the question whether the judge's findings were sufficient only by making an oral or written motion at or after the conclusion of the hearing. We decline to decide whether the "plain error" doctrine applies under all of these circumstances, for even if we assume that the question whether the judge's articulation was sufficient has been preserved, affirmance is required on the merits.

Obviously, however, a defendant who fails to present a contention in the trial court when he had an opportunity to do so may face plain error review in an appellate court if he attempts to press the point on appeal. This is especially true if the government promptly asserts the applicability of the plain error standard. Where the defense objection is to the sufficiency of the court's articulation, it is not enough simply to request sentencing as a youth offender. "[P]oints not asserted with sufficient precision to indicate distinctly the party's thesis ... will normally be spurned on appeal." *Miller v. Avirom,* 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) (footnote omitted).

**11.** To the extent, if at all, that any of our prior decisions may be viewed as requiring a more explicit "no benefit" finding than the judge made in this case, they are overruled. Because of the differences between the FYCA and the DCYRA, and the exclusion from the latter of the tilt towards youth offender sentencing reflected in the former, we view our decisions under the FYCA as helpful but not as controlling in the future.

**1.** D.C.Code § 24–803(d) provides:

If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) of this section, then the court may sentence the youth offender under any other applicable penalty provision.

Section 5010 (d) of the Federal Youth Corrections Act differs only in its reference to an addi-

today holds that our local "no benefit" provision, which, in all material respects, is identical to the one under consideration in *Dorszynski*, requires something less for compliance than the Supreme Court specified. I perceive no basis in our local statute or its legislative history to support this court's variant interpretation of the "borrowed" language or its departure from our well-established practice of considering such precedent "as persuasive authority when interpreting a local provision that is substantially patterned on a federal statute." *Benefits Communication Corp. v. Klieforth*, 642 A.2d 1299, 1303–04 (D.C.1994); *see also Foster v. United States*, 615 A.2d 213, 217 (D.C. 1992) ("Because the Youth Rehabilitation Act, passed by the Council of the District of Columbia to 'fill the void created by congressional repeal of the Federal Youth Corrections Act,' is patterned after the federal act, interpretations of the federal act are instructive here.") (citation omitted).

In *Dorszynski*, in interpreting § 5010(d) of the Federal Youth Corrections Act, 18 U.S.C. § 5005 *et seq.* (FYCA), the Supreme Court held that "while an express finding of no benefit must be made on the record, the Act does not require that it be accompanied by supporting reasons," 418 U.S. at 425–26, 94 S.Ct. at 3044, and that the "no benefit" provision does not constitute a substantive standard. *Id.* at 441, 94 S.Ct. at 3052. In explicating its ruling, the Court provided a clear guideline for compliance with the "no benefit" provision when it stated that

> [l]iteral compliance with the Act can be satisfied by any expression that makes clear the sentencing judge considered the alternative of sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act.

tional treatment section, § 5010(c), which provided for a longer term of treatment than § 5010(b).

2. I also agree with Judge Reid that the dissenting opinion requires greater precision for compliance by the sentencing court than the statute, as interpreted in *Dorszynski*, demands.

3. The YRA was enacted by the Council of the District of Columbia in 1985 to fill the void left when Congress repealed the Federal Youth Cor-

*Id.* at 444, 94 S.Ct. at 3053. I agree with Judge Reid that the court's formulation today does not comport with the Supreme Court's interpretation, particularly in its failure to require that there be an expression on the record which "reveals that the trial judge has exercised his discretion and decided that the youth will derive no benefit from YRA treatment." [2] *Post* at 438.

The Youth Rehabilitation Act (YRA) included no changes from the FYCA which altered the "no benefit" provision at issue in this appeal.[3] The provisions of the YRA, to which this court points, apparently as a basis for rejecting the *Dorszynski* interpretation, specifically §§ 24–803(c) and (f), effected no material change supportive of a different interpretation of the "no benefit" language of § 803(d). Section 803(f), which states that the options created by the YRA constitute "sentencing alternatives in addition to the options already available to the court," codifies the Supreme Court's statutory interpretation of the FYCA as set forth in *Dorszynski*. Specifically, the Supreme Court recognized that § 5010(d) of the FYCA "was intended to increase the sentencing options of federal trial judges, rather than to limit the exercise of their discretion whether to employ the newly created options." *Dorszynski, supra*, 418 U.S. at 440, 94 S.Ct. at 3051. Accordingly, the Court held that

> the discretion vested in a district judge under § 5010(d) is essentially the same as the traditional discretion vested in the court, for example, to impose the minimum sentence on a first offender or a larger sentence on a recidivist.

*Id.* at 442, 94 S.Ct. at 3052. It concluded that a "no benefit" finding did not constitute

rections Act. REPORT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, ON BILL 6–47, "THE YOUTH REHABILITATION ACT OF 1985," (Report) at 2 (June 19, 1985). "For the most part, the YRA is modelled on and similar to its federal predecessor." *Vaughn v. United States*, 598 A.2d 425, 429 (D.C.1991) (citing Report at 3). Although there are some significant differences between the FYCA and the YRA, the provision which concerns us primarily, § 24–803(d), is identical to the provision in the FYCA.

a substantive standard and that therefore, the sentencing court was not required to state reasons for choosing an alternative adult sentence. *Id.* at 441, 94 S.Ct. at 3051–52. Since the substance of § 803(f) of the YRA essentially capsulizes these aspects of the Supreme Court's interpretation of the FYCA at the time it decided *Dorszynski,* there is no basis for concluding that the inclusion of § 803(f) in the YRA constrains us to interpret our "no benefit" provision any differently than the Supreme Court did. Therefore, I disagree with the court that adoption of the "government's 'fall-back' position" in interpreting the "no benefit" finding is required "[i]n order to reconcile subsections (d) and (f)" and "to accommodate the language of each of these provisions." See *ante* at 434.

The court also finds significant to its holding that § 803(c) of the District's YRA, which requires that the sentencing court state reasons for imposing a YRA sentence, represents a change which reverses "the FYCA's tilt in favor of youth offender sentencing." [4] Assuming that to be the case, this additional requirement for imposition of a sentence under § 24–803(c) of the YRA effected no material change in the "no benefit" requirement of § 803(d). Section 24–803(c) provides that "[w]here the court finds that a person is a youth offender and determines that the youth offender will derive benefit from the provisions of this chapter, the court shall make a statement on the record of the reasons for its determination." In addition to allowing the youth offender to present facts to the court bearing upon its sentencing decision, one purpose of this provision, as reflected in the legislative history, is that it affords the prosecutor an opportunity to argue against such treatment. Report at 3. Significantly, in discussing this new provision, there follows a statement that "[t]he judge may also impose an adult sentence *if he or she finds that there will be no benefit.*" *Id.* (emphasis added). Thus, the intention to retain the "no benefit" finding requirement, already clear from the inclusion in the YRA of § 803(d), is further buttressed by this expression of legislative intent in spite of the enactment of the new § 24–803(c). For these reasons, there appears to be no basis for concluding, as the majority seems to, that the provisions of § 803(c) require a change in the interpretation accorded the language in § 803(d) by the Supreme Court.

This jurisdiction's adoption of the universally recognized principle of statutory construction requires that "[w]hen a local provision is borrowed directly from a federal statute, the Council [of the District of Columbia] is presumed to have borrowed the judicial construction thereof as well." *Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 635 (D.C.), *cert. denied,* 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989) (quoting *Hughes v. District of Columbia Dep't of Employment Servs.,* 498 A.2d 567, 571 n. 8 (D.C.1985)) (alteration in original) (other citations omitted). We should adhere to this proposition and to the sound principle of recognizing the Supreme Court's interpretation of the identical federal statutory provision as persuasive, if not controlling, authority. See *Klieforth, supra,* 642 A.2d at 1303–04; *see also District of Columbia v. Patterson,* 667 A.2d 1338, 1343 n. 14 (D.C.1995) ("Supreme Court interpretations of general federal statutes are, of course, binding on all courts, state or federal.") (citations omitted). Therefore, I disagree with the court's determination that because of additional provisions in the YRA, "we view our decisions under the FYCA as helpful but not controlling in the future." [5]

While the trial court's "no benefit" determination was not a model of clarity, it was adequate to meet the requirements set forth in *Dorszynski* and its progeny in this jurisdiction. In *Dorszynski,* the Supreme Court stated that compliance with the Act was met by "any expression that makes clear the sentencing judge considered the alternative sentencing under the Act and decided that the youth offender would not derive benefit from treatment under the Act." 418 U.S. at 444, 94 S.Ct. at 3053. In light of this instruction from *Dorszynski,* this court has held that compliance with the "no benefit" finding

---

**4.** See *ante* at 432.

**5.** See *ante* at 435 n. 11.

requirement does not require that the trial court "parrot the statutory words if it explained its grounds for rejecting the [Youth Act] proposal." *Taylor v. United States*, 324 A.2d 683, 685 (D.C.1974); *see also Bettis v. United States*, 325 A.2d 190, 198 (D.C.1974). Here, essentially, for the reasons stated by Judge Reid in her concurring opinion, I conclude that the record of the sentencing proceeding reveals that the trial court was well aware of appellant's eligibility for sentencing under the YRA, articulated on the record some of the reasons for and against sentencing him under the Act, and found that he would not benefit from such a sentence. *See Taylor*, 324 A.2d at 685. For these reasons, I concur in the judgment of the court.

REID, Associate Judge, joined by RUIZ, Associate Judge, concurring in the judgment:

The majority holds that: "[A]n adult sentence may be imposed if the record reflects that the judge was aware of the availability under the Act of youth offender treatment, that he considered that rehabilitative option, and that he rejected it." The dissent would remand the case for resentencing on the ground that: "[T]he trial judge's ruling did not meet [the following] test[:]" "[B]efore denying treatment of an eligible youth offender under the District of Columbia Youth Rehabilitation Act (YRA) . . ., the trial judge must make an explicit 'no benefit' finding, as was required under the former Federal Youth Corrections Act (FYCA) interpreted in *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974)."

While we agree that the judgment should be affirmed, we respectfully disagree with the majority's interpretation of D.C.Code § 24–803(d). The word "considered" is not equivalent to "an express finding of no benefit . . . made on the record. . . ." *Id.* at 425–26, 94 S.Ct. at 3044. We also reject the majority's reading of § 24–803(f) in that it eviscerates the substance of §§ 24–803(c) and (d).

Although we are more inclined toward the dissent's interpretation of § 24–803(d), we disagree with the conclusion that: "an *explicit* 'no benefit' finding" is required. (Emphasis added). The Supreme Court in *Dorszyn-*

*ski* did not use the word "explicit." Rather, it chose the word "express": "We conclude that while an *express* finding of no benefit must be made on the record, the Act does not require that it be accompanied by supporting reasons." 418 U.S. at 425–26, 94 S.Ct. at 3044 (emphasis added). We believe that, as used by the dissent, the word "explicit" demands more than does the word "express" in the context of *Dorszynski*. The dissent in the division opinion in *Veney*, which is incorporated in the dissent here, seems to require the record to "unmistakably [show]" that no benefit would result to the defendant from youth offender treatment. *Veney v. United States*, 658 A.2d 625, 644 (D.C.1995). The trial judge would have to use "words that can only be construed to mean 'no benefit.'" *Id.* at 646. An example of an "unmistakable showing" would be the ["incorporation of] an expert report or finding that showed that Veney would not gain from YRA sentencing." *Id.* at 645. Another example would be the use of the exact statutory words. *Id.* at 646.

When *Dorszynski* is read as a whole, the type of precision the dissent requires cannot be found. The purpose of the "express no benefit finding" is "to insure that the sentencing judge exercised his discretion in choosing not to commit a youth offender to treatment under the Act." 418 U.S. at 443, 94 S.Ct. at 3052. Moreover, the "express no benefit finding" is "not to be read as a substantive standard. . . . [and] the Act does not require that it be accompanied by supporting reasons." *Id.* at 441, 94 S.Ct. at 3052. Hence, we conclude that before denying YRA treatment, the trial judge must make an express finding of no benefit on the record, but the Act does not require the finding to be accompanied by supporting reasons. It is sufficient if the record reveals that the trial judge has exercised his discretion and decided that the youth will derive no benefit from YRA treatment.

The record of Veney's March 16, 1993, sentencing reveals that the trial judge exercised his discretion and decided that Veney would not benefit from YRA treatment. We agree with the dissent that "rehabilitation and community safety are two sides of the

same coin", and that: "The judge is authorized to find 'no benefit' if the youth's prospects for rehabilitation, through YRA treatment, are unlikely to assure community safety upon his release." Here, the trial judge concluded that Veney's prospects for rehabilitation, through YRA treatment, would be unlikely to assure community safety upon his release. This is what he obviously meant in making the statement: "And although I don't think it would be a very wise decision for them [i.e., YRA authorities] to release you earlier than you would be released as an adult [,][u]ltimately, the Court doesn't have any control over it." The trial judge clearly regarded the case as "difficult." Nonetheless, he exercised his discretion, reached a decision and made an express finding of "no benefit" after weighing evidence before him and arguments made concerning Veney's mental age, his psychological and emotional problems, and his dangerousness. The sentencing record reveals that the trial judge regarded Veney's dangerousness as extending beyond his one heinous act of manslaughter while armed, as manifested by the following on the record statement:

> I can't overlook the fact that you have been carrying around a gun for a while and I cannot assure myself that you only had that gun for Mr. Locus, because of something that he had done to you, as opposed to having that gun for its general use whenever you felt it happened to be needed.

1. Unlike Judge REID, *ante* at 438, I see no difference between the adjectives "explicit" and "express," and I intended none in my *Veney* dissent at division applying the Supreme Court's decision in *Dorszynski v. United States,* 418 U.S. 424, 425, 94 S.Ct. 3042, 3044, 41 L.Ed.2d 855 (1974). I have used the words interchangeably as in other YRA decisions of this court. *See Veney* 658 A.2d at 634–36 & n. 12 (quoting *(James) Smith v. United States,* 597 A.2d 377, 381–83 (D.C.1991), and *(Curtis) Smith v. United States,* 330 A.2d 519, 522 (D.C.1974)) (Ferren, J., dissenting). Indeed, the Supreme Court itself in *Dorszynski* used the two words as synonyms. The Court said certiorari was granted to resolve a conflict in the Circuits as to whether the FYCA "requires a federal district court first to make an *explicit* finding, supported by reasons in the record, that the offender would not benefit from [FYCA] treat-

The trial judge listened to the arguments of Veney's counsel that there was a danger of his victimization at Lorton, that he would have more supervision at the Youth Center than Lorton. He also heard the arguments of the government that it was not clear whether in practice, as opposed to theory, Veney would receive better psychiatric counseling at Lorton than the Youth Center. After weighing Veney's background, his dangerousness to the community, and whether he would receive better psychiatric counseling at Lorton or at the Youth Center, the record reveals that the trial judge exercised his discretion by deciding that Veney would not benefit from YRA treatment because his prospects for rehabilitation through the YRA program were unlikely to assure community safety upon his release. No incantation or recitation of the words "no benefit" was necessary so long as the sentencing record reveals that the trial judge made an express finding of no benefit. On the record before us, we believe that the requisite finding was made. Therefore, we concur that the judgment appealed from should be affirmed.

FERREN, Associate Judge, dissenting:

Respectfully, I dissent for the reasons set forth in my separate opinion in *Veney v. United States,* 658 A.2d 625, 631 (D.C.1995) (Ferren, J., dissenting), in particular Part II., *id.* at 638–650. I conclude that, before denying treatment of an eligible youth offender under the District of Columbia Youth Rehabilitation Act (YRA), D.C.Code § 24–801 (1989 Repl.), the trial judge must make an explicit [1] "no benefit" finding, as was re-

ment." *Dorszynski,* 418 U.S. at 425, 94 S.Ct. at 3044 (emphasis added). And later, the Court supplied the clincher by saying on the last two pages of the opinion:

> The question whether the finding of "no benefit" must be *explicit* or whether it may be *implicit* in the record of a particular case is answered by the manifest desire of Congress to assure that treatment under the Act be considered by the court as one option whenever the youth offender is eligible for it.

> \* \* \* \* \* \*

> An *explicit* finding that petitioner would not have benefited from treatment under the Act would have removed all doubt concerning whether the enlarged discretion Congress provided to sentencing courts was indeed exercised.

quired under the former Federal Youth Corrections Act (FYCA) interpreted in *Dorszynski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). *See* 18 U.S.C. § 5010 (repealed). I further conclude that in this case the trial judge's ruling did not meet that test. I therefore would remand for resentencing.

At this time, I would add only two observations for emphasis. First, by stressing that the sentencing judge, in evaluating "benefit," must "focus exclusively on the rehabilitation that can be expected under the YRA," *Veney*, 658 A.2d at 643 (Ferren, J., dissenting), I have noted that rehabilitation and community safety are two sides of the same coin. The judge is authorized to find "no benefit" if the youth's prospects for rehabilitation, through YRA treatment, are unlikely to assure community safety upon his release. *See id.* at 642–44.

Second, because the YRA's focus is exclusively on the youth's potential for rehabilitation (including protection of the public from antisocial behavior), I emphatically disagree with the majority's view that the sentencing judge may reject YRA sentencing for a youth who concededly would benefit from YRA treatment. *See Cole v. United States*, 384 A.2d 651, 652 (D.C.1978) (applying FYCA). I do not believe the YRA permits the judge in such a case to impose an adult sentence instead, sending the youth to prison solely to mete out "punishment" or to accomplish "general deterrence." *Ante* at 434. Those additional sentencing motives are wholly outside the YRA's purview.

The majority finds authority for its punishment/deterrence rationale from D.C.Code § 24–803(f), which says that the YRA's sentencing provisions, subsections (a) through (e), "provide sentencing alternatives in addition to the options already available to the court." In light of the required "benefit" or "no benefit" finding under D.C.Code §§ 24–803(c) & (d), I do not believe § 24–803(f) can be read to mean that an adult sentencing option, based on deterrence and punishment rationales, is available for youths who concededly would benefit from YRA treatment. Given the history and purpose of the YRA, the only sound reading of § 24–803(f) is simply to confirm that the YRA, with its benefit/no benefit requirement, has been added to—and perforce qualifies—the sentencing "options already available."

*Id.* at 443, 444, 94 S.Ct. at 3052–53 (emphasis added). To the Court, therefore, "express" means "explicit." Webster confirms the nondistinction. It says "explicit" and "express" are synonyms, the former connoting "plain distinct expression that leaves no need for the reader or hearer to infer," the latter stressing "the idea that whatever is under consideration has been express and not left to tacit understanding." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (UNABRIDGED) 801 (1986). In any event, I understand Judge REID not so much to disagree that "explicit" and "express" are synonyms as to pick on the word difference as a rhetorical device for saying that the Supreme Court's requirement of an "express finding of no benefit," *Dorszynski*, 418 U.S. at 425, 94 S.Ct. at 3044, has a somewhat different substantive meaning from the interpretation this court and I have previously given it. On that meaning we simply disagree, although marginally I would say.