# Application of 18 U.S.C. § 208 to Service by Federal Officials on the District of Columbia Downtown Business Improvement District Corporation Board of Directors

A federal official serving on the Board of Directors of the District of Columbia Downtown Business Improvement District Corporation in his or her official capacity is not a director of an outside organization within the meaning of 18 U.S C § 208, and therefore the official's service is not barred by § 208.

August 7, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
GENERAL SERVICES ADMINISTRATION

This memorandum responds to your request for our opinion regarding the application of 18 U.S.C. § 208 (1994) to the service of federal officials on the board of the District of Columbia Downtown Business Improvement District Corporation ("the Downtown BID Corporation").[1] We have concluded that the District of Columbia ordinance authorizing the formation of BID Corporations eliminates the potential for conflict between a federal official's loyalty to the federal government and his or her fiduciary duty to the BID Corporation under District of Columbia law. Accordingly, a federal official who serves on the board of a BID Corporation in his or her governmental capacity will not be a director of an outside organization within the meaning of § 208, and that section's restrictions will not bar such service.

## I. *The Downtown BID Corporation*

The Business Improvement Districts Act of 1996, D.C. Law 11–134 (Michie) (codified as amended at D.C. Code Ann. §§ 1–2271 to 2292 (Michie Supp. 1998)) ("the BID Act" or "the Act"), authorizes the formation of "business improvement district corporations," including a Downtown BID Corporation, to be organized under the District of Columbia's Nonprofit Corporation Act, D.C. Code Ann. §§ 29–501 to 599.16 (Michie 1996 & Supp. 1998). *Id.* §§ 1–2274(c), 1–2273. Each owner and commercial tenant of nonexempt real property within the boundaries described in the statute is a member of the Downtown BID Corporation. *Id.* § 1–2273. Once formed, a BID Corporation must apply for registration. If the application is accepted, a "BID tax" will be assessed on the owners of nonexempt property in the BID. *Id.* § 1–2285. Owners of exempt real property, including the District government and the federal government, may voluntarily make a payment to a BID Corporation in lieu of the BID tax. *Id.* § 1–2291. The revenues will

---

[1] Letter for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Emily C Hewitt, General Counsel, General Services Administration (Aug 26, 1997)

fund additional services and improvements to the area within the BID's bound-aries. *See id.* §§ 1–2272(6), 1–2271(b), 1–2274(a)(2); Articles of Incorporation, District of Columbia Department of Consumer and Regulatory Affairs, Business Regulation Administration Certificate of Incorporation, art. III(A) (May 20, 1997) ("Articles of Incorporation").

The Downtown BID Corporation was incorporated in the District of Columbia on May 20, 1997. *See* Articles of Incorporation. It is governed by a board of directors, which "shall include owners . . . and commercial tenants, and also may include residents, community members, *and governmental officials*; provided, that not less than a majority of all Board members shall represent owners." D.C. Code Ann. § 1–2277(a) (emphasis added). Directors do not receive a salary or a fee for attending meetings, but may be reimbursed for actual and reasonable out-of-pocket expenses incurred in the performance of their duties. Bylaws of the Down-town Business Improvement District Corporation, art. IV(E) ("Bylaws"). Because the federal government owns and leases a substantial amount of property in the Downtown BID, and because the BID taxes may be passed through to the federal government under the terms of certain leases, the General Services Administration ("GSA") would like to have a representative on the board of the Downtown BID Corporation.

The Articles of Incorporation list thirty-seven initial directors, including Nelson Alcalde, GSA's Regional Administrator for the National Capital Region. Mr. Alcalde is listed by name, with no reference to his federal office. Articles of Incor-poration, art. XIV. The initial board was to serve for 120 days, after which the directors were to be elected by the members of the BID. Bylaws, art. IV(B)(2). A director may be removed by a two-thirds vote of the other directors in office, but only for cause. Bylaws, art. IV(B)(6).

The participation of the federal government in the Downtown BID Corporation is expressly addressed just once in the corporation's bylaws. That provision sets out the formula for determining the number of votes to which each member of the corporation is entitled. The number of votes allocated to each member varies based on several factors, including the use of the property; whether the member is an owner, an owner/occupant, or a commercial tenant; the square footage of the property; and whether the property is exempt or nonexempt. Bylaws, art. VIII(C). Each owner of exempt real property in the BID area, "including the District of Columbia and the federal government, who becomes a member of the BID by voluntarily making payments to the BID," is to have a vote proportional to the ratio of its voluntary contribution and the BID tax that would be assessed on a nonexempt property of equal size. Bylaws, art. VIII(C)(8).

## II. *Analysis*

Section 208 prohibits any officer or employee from participating "personally and substantially" as a government official in any "particular matter" in which an "organization in which he is serving as officer, director, trustee, general partner or employee . . . has a financial interest" unless he obtains a waiver or satisfies an exception outlined in § 208(b). 18 U.S.C. § 208(a) (1994). Ordinarily, § 208 disqualifies a government official from taking part in decisions affecting the financial interests of a private entity on whose board of directors he or she sits.

In a 1996 opinion, this office concluded that 18 U.S.C. § 208(a) "would prevent a government employee from serving on the board of directors of an outside organization in his or her official capacity, in the absence of: (1) statutory authority or a release of fiduciary obligations by the organization that might eliminate the conflict of interest, or (2) a waiver of the requirements of § 208(a), pursuant to 18 U.S.C. § 208(b)." *Service on the Board of Directors of Non-Federal Entities by Federal Bureau of Investigation Personnel in Their Official Capacities*, 20 Op. O.L.C. 379 (1996) ("FBI Memorandum"). Both a statute and a release by the organization (assuming such a release is permissible under state law), we reasoned, would overcome the inherent conflict of interest between a government employee's loyalty to the federal government and his or her fiduciary duty to an outside organization under state law. *See id.*[2]

The BID Act does not fit neatly into either of these previously recognized grounds for relief from the requirements of § 208. The BID Act is a District of Columbia ordinance, not a federal statute, and it does not provide a release on behalf of a BID Corporation. Nevertheless, the ordinance defines the duty of a federal official who serves as a BID Corporation director under District of Columbia law so as to eliminate the potential for a conflict of interest with the United States. The BID Act, we believe, provides for service by federal officials in their official capacities, and recognizes that federal officials, in cases of conflict, must give their allegiance to their federal employer. It thus provides the equivalent of a waiver of conflicting fiduciary duty. For that reason, we conclude that the prohibitions of § 208(a) would not bar a federal official from serving on a BID Corporation board in his or her official capacity.

---

[2] We have twice concluded that § 208 would apply to service on a private board where no statute provided for ex officio service and where it appeared that the director would owe the private corporation a fiduciary duty. *See* FBI Memorandum (concluding that § 208 would apply to the service of FBI personnel on non-federal non-profit entities in their official capacities); *Applicability of 18 U S C. § 208 to Proposed Appointment of Government Official to the Board of Connie Lee*, 18 Op O.L C 136 (1994) (finding that § 208 would apply to a Treasury official serving on the board of a private, for-profit corporation owned m part by the federal government).

A.

We believe that § 1–2277 of the BID Act authorizes federal officials to serve as directors of a BID Corporation in an official capacity. Section 1–2277(a) of the BID Act provides that

> Board members shall include owners, or principals, agents, partners, managers, trustees, stockholders, officers, or directors of owners, and commercial tenants, and also may include residents, community members, *and government officials*; provided, that not less than a majority of all Board members shall represent owners.

*Id.* Given the pervasive presence of the federal government in the District of Columbia, it is reasonable to construe the term "government official" in a District of Columbia ordinance as including officials of the United States. This construction is consistent with the treatment of the District of Columbia and the federal government in the portion of the Downtown BID Corporation bylaws governing the voting rights of owners of exempt property. *See* Bylaws, art. VIII(C)(8) (an owner of exempt property, "including the District of Columbia and the federal government, who becomes a member of the BID by voluntarily making payments to the BID," is entitled to proportional vote).

Although the BID Act does not address whether a federal official who serves as a director does so in a personal or official capacity, the better interpretation is that § 1–2277(a) authorizes service in an official capacity. Statutes must be interpreted, if possible, to give each word some operative effect. *Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 209 (1997); *United States v. Menasche*, 348 U.S. 528, 538–39 (1955). If the District of Columbia Council ("Council") intended to allow government officials merely to serve in a personal capacity, it would not have been necessary, as a general matter, to include the term "government official" in the list of persons eligible for membership on the board. In most instances, a government official serving as a director in his or her personal capacity will be eligible as a member of one of the other categories enumerated in § 1–2277(a), such as a "community member," a "resident," or a "commercial tenant." Construing the term "government official" to authorize service in an official capacity gives that term a meaning not covered by those other categories. We therefore interpret § 1–2277 as authorizing a federal official to serve on the board of a BID Corporation in his or her official capacity.

B.

The BID Act does not expressly address the duty of a federal official serving on the board in the event that the interests of the BID Corporation conflict with

those of the federal government. To determine the scope of that duty, we must consider the purposes of the Act and attempt to construe the statute in a manner that effectuates the intent of the Council.

When interpreting a statute, "[w]e may presume 'that our elected representatives, like other citizens, know the law.'" *Director, Office of Workers' Compensation Programs v. Perini North River Assocs.*, 459 U.S. 297, 319 (1983) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 696–97 (1979)); *cf. Smith v. United States*, 597 A.2d 377, 382 n.11 (D.C. 1991) (presumption that Congress knows statutory construction given to prior statutory provisions when it incorporates them into later legislation also applies to D.C. Council). The District of Columbia's authorization for a federal official to serve in an official capacity occurred against two background principles of law that are relevant to our analysis. The first is that a federal government employee serving in an official capacity owes a duty of loyalty to the United States. *See, e.g.*, 18 U.S.C. §§ 201–209 (1994 & Supp. II 1996); *Crocker v. United States*, 240 U.S. 74 (1916) (allowing government to rescind contract where contractor would pay employee a portion of contract amount); *United States v. Carter*, 217 U.S. 286 (1910) (permitting government to recover $500,000 received by Army officer after using his influence to award a contract to a paying party). The District of Columbia has no authority to modify that duty. The second is that a director of a District of Columbia membership corporation owes a fiduciary duty to the corporation and its members, *Wisconsin Ave. Assocs. v. 2720 Wisconsin Ave. Cooperative Assoc.*, 441 A.2d 956, 962–63 (D.C.), *cert. denied*, 459 U.S. 827 (1982), but the District of Columbia has the authority to define and thus to modify the obligations of a director to a District of Columbia corporation under District of Columbia law. *See* District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93–198, §§ 302, 404(a), 87 Stat. 774, 784, 787 (1973) (vesting legislative power of the District in the Council).[3]

Considering these two background principles together, we conclude that when the Council authorized federal officials to serve as directors in their official capacities, it must be deemed to have anticipated that, in the event of a conflict between the interests of the BID Corporation and the interests of the United States, those officials would serve the interests of the United States. Because the Council has the authority to define the duty of a director under District of Columbia law, its authorization of official service by federal government officials is best read as implying that serving the interests of the United States in that situation would not violate the director's obligations to the BID Corporation under District of

---

[3] The District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub L No 104–8, 109 Stat 97, did not remove the legislative power from the Council, but did place significant limitations on the Council's authority. In any control year, the Council must submit each act passed by the Council and signed by the Mayor to the Control Board for review to determine if the act is consistent with the approved financial plan and budget *Id.* § 203(a), 109 Stat. at 116 If, within seven days, the Control Board concludes that the act is not consistent with those requirements, the act will not take effect *Id.* § 203(a)(5), 109 Stat. at 117.

Columbia law. Accordingly, in the event of any conflict, a federal official serving as a BID Corporation director in his or her governmental capacity is authorized by the BID Act to serve the interests of the United States without violating his or her duty to the BID Corporation under District of Columbia law. For that reason, § 208(a) would not bar the service of a federal official in his or her official capacity on the board of the Downtown BID Corporation.

### III. *Conclusion*

Section 1–2277 of the BID Act authorizes federal officials to serve as BID Corporation directors in an official capacity. In so doing, that section impliedly authorizes a federal official who is serving as such a director to place the interests of the United States above those of the BID Corporation in the event of a conflict between the two. Therefore, the Act is the equivalent of a waiver of conflicting fiduciary duty. Thus, a GSA official serving on the board of the Downtown BID Corporation in his or her official capacity would not be a "director" within the meaning of § 208(a), and that section's proscriptions would not bar the official's service.

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
